[Cite as *Hurst v. Hurst*, 2013-Ohio-2674.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| WENDY M. HURST (RAMSEY) | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 12-CA-70 |
| MARK E. HURST | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil appeal from the Licking County Court of Common Pleas, Domestic Relations Division, Case No. 07-DR-00993 RPW

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     June 24, 2013

APPEARANCES:

For Plaintiff-Appellee

MARK E. HURST
A-586245, D-5
o/o CCI
Box 5500
Chillicothe, OH 45601

For Defendant-Appellant

WENDY M. HURST (RAMSEY)

*Gwin, P.J.*

{¶1} Appellant Mark E. Hurst appeals the decision of the Licking County Court of Common Pleas, Domestic Relations Division that denied his motion to modify child visitation regarding his two minor children and denied his motion for contempt.[1] Appellee Wendy M. Ramsey [fna "Hurst"] ["Mother"] is appellant's former spouse and the mother of these two children.[2]

*Facts and Procedural History*

{¶2} On August 11, 2009, Mother and Appellant were granted a divorce. The parties have two children born of the marriage, D.H. (06/27/2001) and W.H. (05/21/2003). Mother was named the sole custodian and residential parent of the parties' children. The divorce decree further provided,

> 3. PARENTING TIMES, VACATIONS, AND HOLIDAYS. The Defendant [Appellant] shall have no parenting time with the minor children until further order of this Court. Further, there shall be no phone contact with the minor children pending further order of this Court.

{¶3} Appellant did not appeal the decision. On August 6, 2008, Appellant was found guilty of pandering obscenity involving a minor, in violation of R.C. 2907.321(A)(5); pandering sexually-oriented matter involving a minor, in violation of R.C. 2907.322(A)(5); and illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(3). The offenses were alleged to have taken place in March and April 2007. See, *State v. Hurst*, 5th Dist. No. 2008-CA-0104,

---

[1] Appellant has abandoned his complaint to determine parentage of a third child J.M.R. (07/15/2008). Appellant concedes he is not the father and filed a motion on May 20, 2013 to remove that issue from this appeal, which this Court has granted.

[2] Appellee did not file a brief in this matter.

2009-Ohio-983. Appellant served his full term, and was released under the supervision of the Adult Parole Authority in November of 2011. See, *State v. Hurst*, 5th Dist. No. 12-CA-20, 2012-Ohio-6074, ¶4 (vacating Appellants classification as a sexually oriented offender pursuant to *State v. Williams,* 129 Ohio St.3d 344, 2011–Ohio–3374 because none of the offenses for which Appellant was convicted were considered a sexually oriented offense under the previous version of R.C. 2950.01(D)).

**{¶4}** On September 13, 2011, Mother filed her notice of intent to relocate with the children. Pursuant to the issuance of a Civil Protection Order, Mother's address was not released to Appellant and has been sealed. (T. at 52).

**{¶5}** On January 19, 2012, Appellant filed a pro se motion, which the trial court characterized as a motion to modify parenting times, and a motion for contempt against Mother. The trial court advised Appellant to re-file the contempt motion because he had not followed the required procedures for the filing of a motion for contempt. On January 23, 2012, Appellant filed a verified motion for contempt. Both motions were set for an evidentiary hearing before a magistrate on April 12, 2012.

**{¶6}** Appellant and Mother appeared pro se at the hearing. Each testified and was cross-examined by the other. Relevant to this appeal, Mother additionally called two witnesses.

**{¶7}** On May 10, 2012, the magistrate filed her findings of fact and conclusions of law denying Appellant's motions. On May 14, 2012, Appellant filed his objections to the magistrate's decision. The trial court overruled Appellant's objections noting that Appellant failed to request a transcript of the April 12, 2012 hearing before the magistrate by judgment entry filed July 17, 2012.

{¶8} On July 18, 2012, Appellant filed a motion to reconsider his objections together with an affidavit of indigency. The trial court denied Appellant's motion by Judgment Entry filed August 6, 2012, noting that Appellant never requested a transcript or an extension of time to obtain one.

{¶9} The trial court affirmed the magistrate's decision and denied each of Appellant's motions by Judgment Entry filed August 6, 2012.

*Assignments of Error*

{¶10} Appellant raises seven pro se assignments of error,

{¶11} "I. HEARSAY EVIDENCE AND TESTIMONY.

{¶12} "II. ABUSE OF DISCRETION.

{¶13} "III. SUFFICIENT AND COMPELLING EVIDENCE.

{¶14} "IV. DEPRIVATION OF LIBERTY AND PROPERTY.

{¶15} "V. BIAS AND PREJUDICE.

{¶16} "VI. DOUBLE JEOPARDY.

{¶17} "VII. THE MAGISTRATE VIOLATED THE APPELLANTS CONSTITUTIONAL, 14th AMMENDMENT [sic.] RIGHT TO EQUAL PROTECTION AND TREATMENT."

*Pro se Appellants*

{¶18} We understand that Appellant has filed this appeal pro se. Nevertheless, "like members of the bar, pro se litigants are required to comply with rules of practice and procedure." *Hardy v. Belmont Correctional Inst.,* 10th Dist. No. 06AP-116, 2006-Ohio-3316, ¶ 9. See, also, *State v. Hall,* 11th Dist. No. 2007-T-0022, 2008-Ohio-2128, ¶11. We also understand that "an appellate court will ordinarily indulge a pro se litigant

where there is some semblance of compliance with the appellate rules." *State v. Richard,* 8th Dist. No. 86154, 2005-Ohio-6494, ¶4 (internal quotation omitted).

**{¶19}** In *State v. Hooks*, 92 Ohio St.3d 83, 2001-Ohio-150, 748 N.E.2d 528(2001), the Supreme Court noted, "a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. See, *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500(1978)." It is also a longstanding rule "that the record cannot be enlarged by factual assertions in the brief." *Dissolution of Doty v. Doty,* 4th Dist.No. 411, 1980 WL 350992 (Feb. 28, 1980), citing *Scioto Bank v. Columbus Union Stock Yards*, 120 Ohio App. 55, 59, 201 N.E.2d 227(1963). New material and factual assertions contained in any brief in this court may not be considered. See, *North v. Beightler,* 112 Ohio St.3d 122, 2006-Ohio-6515, 858 N.E.2d 386, ¶7, quoting *Dzina v. Celebrezze,* 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 1202, ¶16. Therefore, we have disregarded facts and documents in Appellant's brief that are outside of the record.

**{¶20}** In the interests of justice, we shall attempt to consider Appellant's assignments of error.

*Failure to File transcript with the Trial Court*

**{¶21}** We first must address Appellant's failure to present a transcript to the trial court for its review of Appellant's objections to the magistrate's decision. Appellant filed the transcript of the full hearing in this court with his appeal. The trial court never had the opportunity to review the transcript when considering Appellant's objections to the magistrate's decision.

**{¶22}** Civ. R. 53(D)(3)(b)(iii) provides:

(iii) Objection to magistrate's factual finding; transcript or affidavit. An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ. R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

{¶23} Where an appellant fails to provide a transcript of the original hearing before the magistrate for the trial court's review, the magistrate's findings of fact are considered established and may not be attacked on appeal. *Stark v. Haser,* 5th Dist. No. 03CAF11057, 2004–Ohio–4641, ¶15; *Lamp v. Linton*, 5th Dist. No. 2011-CA-06, 2011-Ohio-6111; *State v. Leite,* 5th Dist. No.1999AP090054, 2000 WL 502819(April 11, 2000); *Fogress v. McKee* 5th Dist. No. 99CA15, 1999 WL 668580(Aug. 11, 1999. If an objecting party fails to provide the trial court with the transcript of the proceedings before the magistrate, the appellate court is precluded from considering the transcript of the magistrate's hearing. State *ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730, 654 N.E.2d 1254, 1995–Ohio–272.

**{¶24}** Appellant could have, but did not seek to file an affidavit of the evidence under Civ.R. 53(D)(3)(b)(iii). See e.g., *State ex rel. Motley v. Capers*, 23 Ohio St.3d 56, 491 N.E. 2d 311(1986).(Holding that a transcript is "unavailable" for purposes of App.R. 9(C) which allows the use of narrative statements when indigent appellant is unable to bear cost of providing transcript); *Lamp v. Linton, supra*.

**{¶25}** In *Robinson v. Custom Sports Cycle*, this Court noted,

While significant case law exists which would allow for a free transcript for an indigent criminal defendant, (see, e.g., *State v. Arrington* (1975), 42 Ohio St.2d 114, 326 N.E.2d 667; *Mayer v. City of Chicago* (1971), 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372), or a party involved in certain parental rights proceedings (see, e.g., *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 399 N.E.2d 66), we would concur with the wording of the Tenth District Court of Appeals: "While in criminal appeals a single copy of the transcript must be prepared at government expense and filed with the court for those who are demonstrated to be indigent, no similar responsibility must be borne by the government in the appeal of civil cases." *Duff v. Ohio Dept. of Rehabilitation and Correction* (June 30, 1992), Franklin App. No. 92AP-146, unreported, at 1

**{¶26}** In addition, we have no reason to question the magistrate's credibility determination. The magistrate, having observed the live testimony, was in a superior position when compared to this court to judge the credibility of Mother and Appellant. *State v. Gordon*, 10th Dist. No. 10AP–1174, 2011–Ohio–4208, ¶14 (triers of fact were in a much better position to adjudge the credibility of the witnesses given their ability to

view the witnesses' live testimony). Our inability to even review the transcript testimony makes it nearly impossible for us to overturn the magistrate's credibility determination. See, e.g., *Elyria v. Ro*we, 121 Ohio App.3d 342, 344, 700 N.E.2d 36(9th Dist. 1997) (because of appellant's failure to provide a transcript of the proceedings below, the appellate court could not review the credibility of the witnesses who testified and presumed the trial court's findings were correct); *Murray v. Murray*, 5th Dist. No. 01–CA00084, 2002–Ohio–2505 (with no transcript of the evidentiary hearing having been filed, we must assume that the trial court properly considered the evidence and credibility of the witnesses).

**{¶27}** Further, Appellant's failure to provide the trial court with a transcript of the magistrate trial precludes him from challenging the decision or judgment as being against the manifest weight of the evidence. *GMS Mgt. Co., Inc. v. Coultier*, 11th Dist. No.2005–L–071, 2006–Ohio–1263, ¶ 26.

**{¶28}** Because Appellant did not file a transcript of the proceedings before the magistrate with his objections, the factual findings of the magistrate are deemed established and may not be attacked on appeal. Accordingly, we review Appellant's assignments of error only to analyze whether the trial court abused its discretion in reaching specific legal conclusions based upon the established facts. We find no abuse of discretion in the trial court's approval and adoption of the magistrate's decision not to grant Appellant parenting time with the two minor children and not finding Mother in contempt.

I.

**{¶29}** After reviewing Appellant's brief including his contentions, we have interpreted Appellant's first assignment of error in the following manner: the trial court erred in allowing Mother to testify that the children had told her Appellant showered nude with them.

**{¶30}** During the evidentiary hearing, the following exchange occurred,

[Appellant]:   Do you have any evidence that –that the defendant was naked when he took a shower with these children?

[Mother]:      They said you were.

(T. at 45). Appellant did not move to strike the response.

**{¶31}** "The general rule is that 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' *State v. Childs* (1968), 14 Ohio St. 2d 56 [ 43 O.O. 2d 119], 236 N.E. 2d 545, paragraph three of the syllabus; *State v. Glaros* (1960), 170 Ohio St. 471 [11 O.O.2d 215], 166 N.E.2d 379, paragraph one of the syllabus; *State v. Lancaster* (1971), 25 Ohio St.2d 83 [54 O.O.2d 222], 267 N.E.2d 291, paragraph one of the syllabus." *State v. Williams*, 51 Ohio St.2d 112, 117, 364 N.E.2d 1364 (1977), *superseded on other grounds by State v. Gillard,* 40 Ohio St.3d 226, 533 N.E.2d 272 (1988).

**{¶32}** Civ.R. 61 sets forth the harmless error rule in civil cases, providing that no error or defect in any ruling is, "ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless

refusal to take such action appears to the court inconsistent with substantial justice." Generally, in order to find that substantial justice has been done to an appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision." *Hallworth v. Republic Steel Corp.*, 153 Ohio St. 349, 91 N.E.2d 690(1950), paragraph three of the syllabus.

{¶33} In the case at bar, the case was tried to a magistrate not a jury. In examining the record to determine this issue, we may give weight to the fact that the error occurred in a trial to the court, rather than in a jury trial. *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65(1968); *State v. Austin*, 52 Ohio App.2d 59, 70, 368 N.E.2d 59(10th Dist. 1976). Indeed, a judge is presumed to consider only the relevant, material and competent evidence in arriving at a judgment, unless the contrary affirmatively appears from the record. *State v. White*, supra, 15 Ohio St.2d at 151, 239 N.E.2d 65; *State v. Eubank*, 60 Ohio St.2d 183, 187, 398 N.E.2d 567, 569-570(1979); *Columbus v. Guthmann*, 175 Ohio St. 282, 194 N.E.2d 143(1963), paragraph three of the syllabus.

{¶34} Based upon the entire record before us, we conclude that any error in the admission of the statement was harmless and if that error had not occurred, the trier of the facts would have made the same decision. *Hallworth, supra.*

{¶35} Appellant's first assignment of error is overruled.

## II & III

{¶36} After reviewing Appellant's brief including his contentions, we have interpreted Appellant's second and third, assignments of error in the following manner: the trial court abused its discretion in denying Appellant parenting time with the children. Specifically, Appellant contends that the magistrate's opinion is based upon insufficient evidence.

### *Visitation*

{¶37} A trial court enjoys broad discretion in deciding matters regarding the visitation rights of nonresidential parents, and its decision is subject to reversal only where there is an abuse of discretion. *Appleby v. Appleby*, 24 Ohio St.3d 39, 41, 492 N.E.2d 831(1986). Thus, the standard of review for matters concerning visitation rights is whether the trial court committed an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028(1989); *Corple v. Corple*, 123 Ohio App.3d 31, 36, 702 N.E.2d 1234(1997). An abuse of discretion implies that "the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶38} In his motion, Appellant requested supervised visitation time with his adult son Brian Hurst as the supervisor.

{¶39} Contemporaneously with the filing of the initial divorce action, Mother and Appellant entered into a consent agreement granting Mother a Permanent Civil Protection Order. (Motion to Amend Civil Protection Order, filed, Sept. 19, 2007, in Case No. 07 DR 817, attached as Exhibit 5 to Appellant's Brief). That order gave Appellant visitation with his children under the supervision of Timothy Crowley, Brian Hurst, who is

the adult son of Appellant and Becky Hurst, who is the Appellant's sister. The motion to amend that order alleged that Appellant had showered with his then six-year-old daughter. The motion further noted that Appellant had been indicted for pandering obscenity involving a minor, illegal use of a minor in nudity oriented material or performance.

**{¶40}** Appellant did not deny the showering incident that occurred during his supervised time; rather he claimed that he was not naked while in the shower with both the six-year-old daughter and his four-year-old son. He further contended that his sister, Becky Hurst was present the entire time. (Appellant's Brief at 3). Following that incident, Appellant's parenting time was modified so it took place at the Woodlands, a private non-profit organization that provided supervised parenting time facilities. The Woodlands no longer offers supervised parenting time facilities. At the hearing, Appellant cited the report of the Guardian ad Litem filed April 24, 2008, which recommended additional midweek visitation supervised at The Woodland and unverified, unauthenticated documents titled "The Woodlands Family Connections Center Visitation Observation Report" to support his request for visitation.[3]

**{¶41}** In reaching her conclusion that it would not be in the best interests of the minor children to allow Appellant any parenting time with them at this point, the magistrate made specific factual findings. As previously noted, however, in the case at bar our review is limited to whether the trial court correctly applied the law to the facts as set forth in the magistrate's decision.

---

[3] The visitation observation reports were not admitted into evidence during the magistrate's hearing.

The standard of review for matters concerning visitation rights is whether the trial court committed an abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028; *Corple v. Corple* (1997), 123 Ohio App.3d 31, 36, 702 N.E.2d 1234. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. In order to further the child's best interest, the trial court has the discretion to limit or restrict visitation rights. *Jannetti v. Nichol* (May 12, 2000), Mahoning App. No. 97 CA239, 2000 WL 652540. "This includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." Id.

*Anderson v. Anderson*, 147 Ohio App.3d 513, 2002-Ohio-1156, 771 N.E.2d 303(7th Dist.), ¶18.

**{¶42}** When ordering a modification of parenting time or visitation, the trial court must consider the enumerated factors in R.C. 3109.051(D) as well as any other factor in the child's best interest. *Braatz v. Braatz*, 85 Ohio St.3d 40, 44, 706 N.E.2d 1218(1999).

**{¶43}** In her decision, the magistrate found,

The Magistrate finds Plaintiff's concerns about the Defendant's son as a supervisor are reasonable. The Magistrate further finds that the children's safety if left with the Defendant could not be ensured at this time. This is in light of the fact that the Defendant's proposed supervisor is

his own son, an individual who the Magistrate finds would fail to provide adequate supervision.

Aside from the Magistrate's concerns as to the Defendant's proposed supervisor, the Magistrate finds it would not be in the best interests of the minor children to allow the Defendant any time with them at this point. The Magistrate finds that the Defendant does not seem to appreciate the severity of his crimes or the very reasonable concerns the Plaintiff has for the children's well being if subjected to the Defendant.

For example, the Plaintiff testified that during the Defendant's past supervised parenting times, the Defendant would offer their six-year-old daughter presents in exchange for her sucking her thumb in his presence. The Magistrate finds that the Defendant did not deny having offered their daughter gifts in exchange for the thumb sucking. The Magistrate finds that it is completely inappropriate and downright creepy for a father to offer his prepubescent daughter gifts in exchange for her allowing him to watch her suck her thumb. The Magistrate finds this information to be incredibly disturbing, especially in light of the Defendant's history of viewing child pornography.

Further, the Plaintiff testified that the Defendant searched for "incest" websites prior to his arrest.

Additionally, Terri Blankenship nka Engelman, a former girlfriend of the Defendant, testified that the Defendant groomed her for sexual

exploits from the time she was very young. The Magistrate finds Ms. Engelman's testimony on all issues to be credible.

Ms. Engelman testified that the Defendant took a special interest in her from the time she was 9 or 10 years old. By the time she was 13 or 14, the Defendant was complimenting [her] body, telling her she was a "true woman" and "more mature" than other girls her age. By the time she was 15, the Defendant openly discussed his sexual attraction to her. The Defendant purchased various adult toys for Ms. Engelman beginning when she was 16. Such inappropriate behavior escalated until the Defendant took Ms. Engelman's virginity.

Again, the Defendant did not contest the majority of Ms. Engelman's testimony. Instead, he stated that he was attracted to younger woman "just like most men are."

The Magistrate finds that the Defendant does not seem to understand how inappropriate and disturbing his behaviors are regarding his own daughter and Ms. Engelman when she was a minor.

Pursuant to the parties' divorce decree, the Defendant was prohibited from having *any* parenting time, and was further prohibited from contacting the children via telephone. In consideration of the relevant and credible evidence admitted into the record, coupled with the fact that the Woodlands no longer offers supervised parenting facilities and the supervisor suggested by the Defendant is inappropriate, the Magistrate recommends the Court deny Defendant's request for parenting time.

The Magistrate makes this recommendation in consideration of the Defendant's past with child pornography, the fact that the Defendant apparently feels no guilt or remorse for the child pornography, or the showering with his young daughter during his supposedly supervised time, and/or his offer of gifts in exchange for the girl sucking her thumb. The Magistrate does not find any compelling reason to allow the Defendant time with the children, but many, many reasons to deny his request.

{¶44} In reaching her conclusion to deny Appellant parenting time with the two minor children at this point in time, the magistrate specifically noted, "ORC 3109.051(D) has guided the Magistrate."

{¶45} The magistrate's decision was based upon competent credible evidence. The magistrate reviewed the appropriate statutes and articulated the basis for her decision. As previously noted, the factual findings of the magistrate are deemed established and may not be attacked on appeal because Appellant did not provide a transcript for the trial court in support of his objections to the magistrate's decision.

{¶46} Upon review, we find that Appellant has failed to prove the trial court abuse its discretion by adoption of the magistrate's decision not to grant Appellant parenting time with the two minor children.

*Contempt*

{¶47} R.C. 2705.02 provides in pertinent part, "A person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer [.]"

**{¶48}** "The purpose of civil contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice...the purpose of sanctions in a case of civil contempt is to coerce the contemnor in order to obtain compliance with the lawful orders of the court." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 58, 271 N.E.2d 815, 817(1971). (Citations and internal quotation marks omitted).

**{¶49}** The basis for the contempt action was the removal of property from the marital residence by the Mother. The parties' divorce decree states that "the parties" own the marital residence. The parties were awarded whatever personal property or household goods were in their respective possession.

**{¶50}** At the hearing, Mother testified that she understood these terms of the divorce decree to mean that since the house was jointly owned, they had equal right to whatever was inside of the residence. At the time she removed the property from the residence, Mother did not live in the residence, but neither did Appellant because he was incarcerated.

**{¶51}** The magistrate found the Mother's interpretation of the divorce decree to be a reasonable one. As such, the Magistrate found the Mother did not violate the terms of the decree by removing items from the jointly titled marital home.

**{¶52}** Based upon consideration of the competent, credible and relevant evidence adduced at hearing, the Magistrate found that the Appellant failed to prove by clear and convincing evidence a prima facie case of civil contempt against the Mother.

**{¶53}** If the contempt charge is premised on a party's failure to obey an order of the court, then the order must be clear and definite, unambiguous and not subject to

dual interpretations, and the contemnor must have knowledge of the order. *Chilcote v. Gleason Constr. Co.*, 5th Dist. No. 01 COA01397, 2002–Ohio–746. An order that is indefinite and uncertain cannot be enforced in contempt. *In re Ayer*, 119 Ohio App.3d 571,576, 695 N.E.2d 1180, 1183–1184(1st Dist. 1997). Because the language utilized in the Final Decree of Divorce with regard to property left inside the residence is ambiguous, the trial court did not abuse its discretion in finding that Mother was not in contempt of court.

{¶54} Appellant's assignment of error and the arguments made with respect to the contempt action are based entirely on factual determinations, which may not be challenged on appeal as no transcript was provided to the trial court.

{¶55} Appellant's second and third assignments of error are overruled in their entirety.

IV.

{¶56} After reviewing Appellant's brief including his contentions, we have interpreted Appellant's fourth assignments of error in the following manner: the magistrate violated Appellant's fifth and fourteenth amendment right to parent his child.

{¶57} Initially we note a deficiency in Appellant's appellate brief; it does not comply with App.R.16 (A)(7), which provides,

> The appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with

citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.

**{¶58}** "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Thomas v. Harmon,* 4th Dist. No. 08CA1 7, 2009-Ohio-3299, ¶14, quoting *State v. Carman,* 8th Dist. No. 90512, 2008-Ohio-4368, ¶31. "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Catanzarite v. Boswell,* 9th Dist. No. 24184, 2009-Ohio-1211, ¶16, quoting *Kremer v. Cox,* 114 Ohio App.3d 41, 60, 682 N.E.2d 1006 9th Dist. 1996). Therefore, "[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions." *Frye v. Holzer Clinic, Inc.,* 4th Dist. No. 07CA4, 2008-Ohio-2194, ¶12. See, also, App.R. 16(A)(7); App.R. 12(A)(2); *Albright v. Albright,* 4th Dist. No. 06CA35, 2007-Ohio-3709, ¶16; *Tally v. Patrick,* 11th Dist. No. 2008-T-0072, 2009-Ohio-1831, ¶¶ 21-22; *Jarvis v. Stone,* 9th Dist. No. 23904, 2008-Ohio-3313, ¶23; *State v. Paulsen*, 4th Dist. Nos. 09CA15, 09CA16, 2010-Ohio-806, ¶6; *State v. Norman*, 5th Dist. No. 2010-CA-22, 2011-Ohio-596, ¶29; *State v. Untied*, 5th Dist. No. CT20060005, 2007 WL 1122731, ¶141.

**{¶59}** According to App. R. 12(A)(2), "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)." An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-

393(1988); *Abon, Ltd. v. Transcontinental Ins. Co.*, 5th Dist. No. 2004-CA-0029, 2005 WL 1414486, ¶100; *State v. Miller*, 5th Dist. No. 04-COA-003, 2004-Ohio-4636, ¶41. "Errors not treated in the brief will be regarded as having been abandoned by the party who gave them birth." *Uncapher v. Baltimore & Ohio Rd. Co.*, 127 Ohio St. 351, 356, 188 N.E. 553, 555(1933).

{¶60} In the case at bar, Appellant has wholly failed to provide any explanation concerning the legal reasons in support of his argument that the actions of the magistrate have violated his constitutional rights.

{¶61} Upon divorce, the court is called upon to intervene and to mediate because of the breakdown in relationships that has occurred. The objective of R.C. 3109.051 is to promote familial relationships by acknowledging and protecting the parents' rights and also the rights of the children. *Andrews v. Andrews*, 12th Dist. No. 88-03-035, 1988 WL 125697(Nov. 28, 1988). In *Andrews*, the court observed,

> This legislation represents an attempt to promote harmony and to maintain relationships as they would have been had the divorce not occurred. In order to accomplish this, it is necessary to consider the rights of children equally as important as those of the parents. Children are entitled to protection from the law just as parents are. *Boyer v. Boyer* (1976), 46 Ohio St. 2d 83. Thus, there will be times when the rights of the two are in competition such as when the issue of visitation arises.

> * * *

> The distinction made by R.C. 3109.05(B) is justifiable and proper as it is necessary to allow children of divorced parents to have the same

chance at maintaining loving, nurturing relationships as those children whose parents remain married. The state has a compelling interest in assuring that the children of a broken marriage receive the attention and care they would have received if the marriage and family had not been drastically altered by the divorce action. See *Hollingsworth v. Hollingsworth* (1986), 34 Ohio App.3d 13, 16.

Therefore, we hold that R.C. 3109.05(B) is a constitutional statutory means by which the state asserts a compelling governmental interest.

Id. at *2.

**{¶62}** The Supreme Court in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054,147 L.Ed.2d 49(2000), recognized that a parent's right to the care, custody, and control of their children is perhaps the oldest fundamental right recognized by the Court. *Troxel* at 65. It did not, however, hold such rights to be absolute and paramount to all other rights. In fact, the plurality opinion in *Troxel* expressly refused to find specific nonparent visitation statutes that infringe upon the parent's fundamental rights to be per se unconstitutional. A parent's rights are always subject to the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034(1979); *In re B.L., supra*, at ¶7. The record demonstrates that it is not in the children's best interest for Appellant to have visitation at this time. He was given a full evidentiary hearing before his right to visitation was restricted.

**{¶63}** The state, by virtue of its police powers and the doctrine of *parens patriae,* is invested with authority to regulate certain aspects of the family. In the instant case, the state does not seek to compel Appellant to raise the children in a certain manner or

to divest him of his parental rights entirely; rather, the state has determined, after a hearing and in accordance with specific statutory obligations, that it is in the best interests of the child to have no visitation with Appellant at this time. Nothing prevents Appellant from filing a motion to modify his rights in the trial court in the future.

{¶64} Appellant's fourth assignment of error is overruled in its entirety.

V.

{¶65} After reviewing Appellant's brief including his contentions, we have interpreted Appellant's fifth assignments of error in the following manner: the magistrate was biased against him.

{¶66} Civ.R. 53(D)(6) provides that disqualification of a magistrate for bias or other cause is within the discretion of the court. *See also In re Disqualification of Wilson*, 77 Ohio St.3d 1250, 1251, 674 N.E.2d 360 (1996). Accordingly, we will not reverse the trial court's decision absent an abuse of discretion. Id.

{¶67} The terms "bias" or "prejudice" refer to "a hostile feeling or spirit of ill will on the one hand, or undue friendship or favoritism on the other, toward one of the litigants or his or her attorneys, with a formation of a fixed anticipatory judgment on the part of a judge as distinguished from an open state of mind which will be governed by the law and the facts." 22 Ohio Jurisprudence 3d 203, Courts and Judges, Section 126.(1988).

{¶68} We note that Appellant does not contend that the trial court was also biased, nor does he argue that the trial court failed to independently review the magistrate's findings of fact and conclusions of law. We therefore presume that the trial court independently reviewed the magistrate's decision and found no bias or prejudice

because it overruled Appellant's objections, adopted the magistrate's decision as its own, and ordered it into law.

**{¶69}** In his appellate brief, Appellant cites to portions of the transcript of the hearing before the magistrate. However, Appellant failed to file a copy of that transcript for review by the trial court. Further, in the case at bar, Appellant did not file a motion with the court to have the magistrate removed. As Appellant failed to follow the proper procedures for disqualification, he has waived any error. *Hawk v. Hawk*, 5th Dist. No. 2002AP040024, 2002-Ohio-4384, ¶23.

**{¶70}** In this case, the magistrate made apparent efforts to act in all fairness towards both parties. After reviewing the record, we find that no bias against Appellant by the magistrate. Our review of the record establishes that the magistrate did allow both sides to fully present testimony, and showed no evidence of bias.

**{¶71}** Appellant's fifth assignment of error is overruled in its entirety.

VI.

**{¶72}** After reviewing Appellant's brief including his contentions, we have interpreted Appellant's sixth assignments of error in the following manner: the decision to deny Appellant visitation with the minor children violated double jeopardy principles.

**{¶73}** Appellant did not raise this argument in his Objections to the Magistrate's Decision.

**{¶74}** It is well established that "if a party fails to object to a conclusion of law or finding of fact issued by a magistrate, pursuant to Civ.R. 53, the party is precluded from raising the issues on appeal." *Koeller v. Koeller*, 12th Dist. No. CA2006–04–009, 2007–Ohio–2998, ¶15; *Heath v. Heath*, 3rd Dist. No. 14-99-44, 2000-Ohio-1653. Accordingly,

because he did not raise an objection based upon double jeopardy principals, Appellant has waived that argument on appeal. Appellant would fair no better even if he had raised a double jeopardy argument.

{¶75} The Double Jeopardy Clauses of the Ohio and United States Constitutions prohibit, among other things, multiple criminal punishments for the same offense. *State v. Uskert*, 85 Ohio St.3d 593, 595, 597, 709 N.E.2d 1200 (1999); *Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). Double jeopardy can be implicated by a prior civil sanction that is so punitive, in either purpose or effect, as to negate its statutory remedial denomination. *United States v. Ward*, 448 U.S. 242, 248–249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). See also *State v. Martello*, 97 Ohio St.3d 398, 2002–Ohio–6661, 780 N.E.2d 250, ¶ 20.

In *Hudson*, 522 U.S. at 96, 118 S.Ct. 488, 139 L.Ed.2d 450, the United States Supreme Court reaffirmed the two-part test for determining whether a particular penalty is a "criminal punishment" for double jeopardy purposes that was set forth in *United States v. Ward* (1980), 448 U.S. 242, 248–249, 100 S.Ct. 2636, 65 L.Ed.2d 742. Under this test, the first question to be answered is "whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.'" *Hudson*, 522 U.S. at 99, 118 S.Ct. 488, 139 L.Ed.2d 450, quoting *Ward,* 448 U.S. at 248, 100 S.Ct. 2636, 65 L.Ed.2d 742. Second, even in those cases where the legislature has indicated an intention to establish a civil penalty, the United States Supreme Court has inquired further whether the statutory scheme was so punitive in purpose

or effect as to transform what was clearly intended to be a civil remedy into a criminal penalty. *Hudson*, 522 U.S. at 99, 118 S.Ct. 488, 139 L.Ed.2d 450; *State v. Uskert* (1999), 85 Ohio St.3d 593, 597, 709 N.E.2d 1200.

* * *

Because the answer under the first part of the Hudson test is that the penalty in question is civil, we must proceed to the second prong of the test, which requires us to ask whether [the statute] is so punitive in purpose or effect that it amounts to a criminal penalty. "'[O]nly the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 100, 118 S.Ct. 488, 139 L.Ed.2d 450, quoting *Ward*, 448 U.S. at 249, 100 S.Ct. 2636, 65 L.Ed.2d 742.

In analyzing this second part of the test, the *Hudson* court stated that it is helpful to refer to the seven guidelines set forth in *Kennedy v. Mendoza–Martinez* (1963), 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644, which include questions such as "[w]hether the sanction involves an affirmative disability or restraint" and "whether it has historically been regarded as a punishment." *Hudson*, 522 U.S. at 99–100, 118 S.Ct. 488, 139 L.Ed.2d 450. In this case however, there is no need to resort to the *Mendoza–Martinez* factors.

*State v. Martello*, 97 Ohio St.3d 398, ¶18, 20, 21.

{¶76} In the case at bar, the decision of the trial court to deny Appellant visitation does not extinguish Appellant's parental rights. Nor does the decision prohibit Appellant from seeking a modification of the order in the future. Double jeopardy principles are not offended by the denial of a motion to modify parenting or visitation time. A decision cornering whether to modify parenting time and is not regarded as a criminal punishment.

{¶77} Appellant's sixth assignment of error is overruled in its entirety.

VII.

{¶78} After reviewing Appellant's brief including his contentions, we have interpreted Appellant's seventh assignment of error in the following manner: Appellant was denied equal protection because the magistrate decided a similar case in a different manner.

{¶79} It is well established that "if a party fails to object to a conclusion of law or finding of fact issued by a magistrate, pursuant to Civ.R. 53, the party is precluded from raising the issues on appeal." *Koeller v. Koeller*, 12th Dist. No. CA2006–04–009, 2007–Ohio–2998, ¶15; *Heath v. Heath*, 3rd Dist. No. 14-99-44, 2000-Ohio-1653. Accordingly, because he did not raise an objection based upon equal protection principals, Appellant has waived that argument on appeal. Appellant would fair no better even if he had raised an equal protection argument.

{¶80} Appellant has submitted an unverified, unauthenticated decision of the magistrate from a separate case. Appellant argues that the magistrate granted visitation rights to the Father in that case even though the Father was convicted of importuning and unlawful sexual contact with a minor.

{¶81} A trial court can take judicial notice of the court's docket. *Helfrich v. Madison*, 5th Dist. No. 08-CA-150, 2009-Ohio-5140, ¶49, *citing State v. Washington*, 8th Dist Nos. 52676, 52677, 52678, 1997 WL 16180(Aug. 27, 1987). However, a court does not have the authority to take judicial notice of the proceedings in another case, including its own judgment entries. Id., citing *State v. LaFever*, 7th Dist. No. 02 BE 71, 2003-Ohio-6545, ¶27; *State v. Blaine*, 4th Dist. No. 03CA9, 2004-Ohio-1241, ¶17; *Diversified Mortgage Investors, Inc. v. Athens Cty. Bd. of Revision*, 7 Ohio App.3d 157, 454 N.E.2d 1330(4th Dist. 1982); *NorthPoint Properties, Inc. v. Petticord,* 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869(8th Dist.), ¶16. The rationale for this holding is that if a trial court takes notice of a prior proceeding, the appellate court cannot review whether the trial court correctly interpreted the prior case because the record of the prior case is not before the appellate court. Id., *citing Blaine, supra*, ¶17; *LaFever, supra*, ¶27; *Buoscio, supra*, ¶34.

{¶82} In *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 522 N.E.2d 524 (1988), the Supreme Court noted,

The general rule is that "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Childs* (1968), 14 Ohio St.2d 56 [236 N.E.2d 545] [43 O.O.2d 119], paragraph three of the syllabus; *State v. Glaros* (1960), 170 Ohio St. 471 [166 N.E.2d 379] [11 O.O.2d 215], paragraph one of the syllabus; *State v. Lancaster* (1971), 25 Ohio St.2d 83 [267 N.E.2d 291] [54 O.O.2d

222], paragraph one of the syllabus; *State v. Williams* (1977), 51 Ohio St.2d 112, 117 [364 N.E.2d 1364] [5 O.O.3d 98]. Likewise, "[c]onstitutional rights may be lost as finally as any others by a failure to assert them at the proper time." *State v. Childs, supra*, [14 Ohio St.2d], at 62 [236 N.E.2d 545], *citing State v. Davis* (1964), 1 Ohio St.2d 28 [203 N.E.2d 357] [30 O.O.2d 16]; *State, ex rel. Specht, v. Bd. of Edn.* (1981), 66 Ohio St.2d 178, 182 [420 N.E.2d 1004] [20 O.O.3d 191], *citing Clarington v. Althar* (1930), 122 Ohio St. 608 [174 N.E. 251], and *Toledo v. Gfell* (1958), 107 Ohio App. 93, 95 [156 N.E.2d 752] [7 O.O.2d 437]. [Footnote omitted.]

36 Ohio St.3d 168, 170, 522 N.E.2d 524; *See also*, *State v. Chandler*, 157 Ohio App.3d 672, 813 N.E.2d 65, 2004-Ohio-3436, ¶72; *State v. Hughett*, 5th Dist. No. 04 CAA 06051, 2004-Ohio-6207, ¶58.

**{¶83}** As the United States Supreme Court observed in *Puckett v. United States*, 526 U.S. 129, 129 S.Ct. 1423, 173 L.Ed.2d 266, (2009),

If an error is not properly preserved, appellate-court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed. There is good reason for this; "anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal."

556 U.S. at 134. (Citation omitted).

**{¶84}** Appellant made no equal protection argument in his objections to the magistrate's decision. Accordingly, the trial court had no opportunity to address this argument. Nor was the record of the case to which Appellant alludes submitted to the trial court with Appellant's objections to the magistrate's opinion. Accordingly, the trial court in this case had no admissible evidence before it concerning the proceedings to which the Appellant alludes. Appellant would fair no better had he raised an equal protection argument in the trial court.

**{¶85}** "The Equal Protection Clauses require that all similarly situated individuals be treated in a similar manner." *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 882 N.E.2d 400, 2008–Ohio–511, ¶ 90, citing *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 839 N.E.2d 1, 2005–Ohio–6505, ¶ 6. *See, also, City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313(1985) (stating that the Equal Protection clause "is essentially a direction that all persons similarly situated should be treated alike"). In other words, "'[t]he equal protection of law implies that all litigants similarly situated may appeal to courts for both relief and defense under like conditions, with like protection, and without discrimination.'" *Conley v. Shearer*, 64 Ohio St.3d 284, 288, 595 N.E.2d 862, 1992–Ohio–133, quoting *Sexton v. Barry*, 233 F.2d 220, 224(6th Cir 1956).

**{¶86}** However,

"[t]he equal protection clause does not reject the government's ability to classify persons or 'draw lines' in the creation and application of laws, but it does guarantee that those classifications will not be based upon impermissible criteria or arbitrarily used to burden a group of

individuals. If the government classification relates to a proper governmental purpose, then the classification will be upheld. Such a classification does not violate the guarantee when it distinguishes persons as 'dissimilar' upon some permissible basis in order to advance the legitimate interests of society. Those who are treated less favorably by the legislation are not denied equal protection of the law because they are not similarly situated to those who receive the benefit of the legislative classification."

*Clark v.* Joseph, 95 Ohio App.3d 207, 211, 692 N.E.2d 36, quoting Nowak & Rotunda, *Constitutional Law,* 570, Section 14.2(4th Ed. 1991).

**{¶87}** Thus, an equal protection claim arises only in the context of an unconstitutional classification made by a state, i.e., when similarly situated individuals are treated differently. *Conley v. Shearer*, 64 Ohio St.3d 284, 288–289, 595 N.E.2d 862(1992). A law that operates identically on all people under like circumstances will not give rise to an equal protection violation. *Conley* at 289, 595 N.E.2d 862.

**{¶88}** The fact that trial courts may come to different conclusions in different cases based upon different facts is not a violation of the Equal Protection Clause. *In re B.L.*, 10th Dist. No. 04AP-1108, 2005-Ohio-1151, ¶17. The Supreme Court in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147, 147 L.Ed.2d 49(2000), recognized that a parent's right to the care, custody, and control of their children is perhaps the oldest fundamental right recognized by the Court. *Troxel* at 65. It did not, however, hold such rights to be absolute and paramount to all other rights. In fact, the plurality opinion in *Troxel* expressly refused to find specific nonparent visitation statutes that infringe

upon the parent's fundamental rights to be per se unconstitutional. A parent's rights are always subject to the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034(1979); *In re B.L., supra*, at ¶7. The record demonstrates that it is not in the children's best interest for Appellant to have visitation at this time.

{¶89} The state, by virtue of its police powers and the doctrine of *parens patriae,* is invested with authority to regulate certain aspects of the family. In the instant case, the state does not seek to compel Appellant to raise the children in a certain manner; rather, the state has determined, after a hearing and in accordance with specific statutory obligations, that it is in the best interests of the child to have no visitation with Appellant at this time. Appellant has not been divested of his parental rights. Nothing prevents Appellant from filing a motion to modify his rights in the trial court in the future.

{¶90} Appellant's seventh assignment of error is overruled in its entirety.

{¶91} For all the foregoing reasons, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Farmer, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER

WSG:clw 0614

[Cite as *Hurst v. Hurst*, 2013-Ohio-2674.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WENDY M. HURST (RAMSEY) | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| MARK E. HURST | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 12-CA-70 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER