[Cite as *In re J.S.*, 2022-Ohio-2502.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE J.S., ET AL.                    :

Minor Children                       :          No. 111143

[Appeal by S.H., Mother]             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 21, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD20906255 and AD20906256

---

### *Appearances:*

Judith M. Kowalski, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

MARY EILEEN KILBANE, J.:

{¶ 1} Appellant S.H. ("Mother") appeals from the juvenile court's decision granting legal custody of her minor children, J.S. (d.o.b. 12/28/2015) and E.S. (d.o.b. 10/11/2017), to the children's paternal great-grandparents, F.S. and P.S.

("great-grandparents"). For the following reasons, we affirm the juvenile court's decision.

## Factual and Procedural History

{¶ 2} On July 21, 2020, the Cuyahoga County Division of Children and Family Services ("agency") filed a complaint in Cuyahoga J.C. Nos. AD20906255 and AD20906256 for dependency and temporary custody of J.S. and E.S. to the children's great-grandparents and filed a motion for predispositional temporary custody of J.S. and E.S. to their great-grandparents.[1] The complaint stemmed from two incidents related to Mother's mental health.

{¶ 3} On July 27, 2020, the court appointed a guardian ad litem "(GAL")" for J.S. and E.S. The agency filed a family case plan on August 20, 2020, that was signed by Mother and B.S., father of J.S. and E.S.[2] The case plan stated that Mother suffered from severe mental illness and was unable to provide care for her children due to two prior hospitalizations. The plan required Mother to engage in mental health services including attendance at all psychiatric appointments and engagement in therapy at Ohio Guidestone. The case worker was to make necessary referrals and monitor Mother's progress by contacting her service providers and

---

[1] The same complaint also sought dependency on behalf of Mother's minor child L.H. (d.o.b. 05/31/2009) and temporary custody of L.H. to her father, A.H., in Cuyahoga J.C. No. AD20906257. Mother stipulated to and the juvenile court ultimately granted legal custody of L.H. to A.H. The current proceedings do not address L.H.'s placement and the factual and procedural history does not include any subsequent reference to L.H.

[2] During the pendency of this action before the juvenile court, B.S., father of J.S. and E.S., stipulated to granting legal custody of the children to their great-grandparents, and he is not a party to this appeal.

observing Mother's behavior during face-to-face contacts. Mother was to submit to random drug screens as requested by the case worker. The case plan noted family support from both maternal and paternal relatives. The permanency goal was to return the children to Mother for reunification.

{¶ 4} On September 18, 2020, the magistrate conducted a hearing and found that the continued residence of the children with Mother was not in their best interests. The court found probable cause to remove the children from Mother's home and granted the agency predispositional temporary custody of J.S. and E.S. The children were placed with their great-grandparents with whom they remained throughout the duration of this case.

{¶ 5} On October 2, 2020, the juvenile court found the allegations of the complaint proven by clear and convincing evidence and adjudicated J.S. and E.S. dependent. The court terminated its previous order committing the children to predispositional temporary custody of the agency and committed them to the temporary custody of great-grandparents. The court found Mother needed to comply with psychiatric and psychological services and establish housing. The court approved the case plan. On October 21, 2020, the juvenile court docketed a journal entry that adopted the magistrate's decision and findings of fact.

{¶ 6} The court's order that granted temporary custody to the great-grandparents was set to expire on July 21, 2021. On May 6, 2021, the agency filed a motion to extend temporary custody for six months until January 21, 2022. The motion also requested that the court issue findings of fact that continued placement

was in the best interests of the children and that the agency made reasonable efforts to finalize a permanency plan for the children ("reasonable efforts motion.") The motion stated if Mother failed to achieve the remaining case plan objectives, the agency would pursue a new permanent home for the children.

{¶ 7} The agency prepared a semiannual administrative review ("SAR") on July 20, 2021. The SAR stated J.S. and E.S.'s placement with their great-grandparents was positive. The children and their great-grandparents had family support from a grandparent and an aunt who lived on the same street. J.S. had progressed well in school and no longer required special education services. J.S. was doing well medically and no longer required yearly MRIs related to ongoing health issues; J.S. was fully recovered and developmentally on target. J.S. received weekly therapy to assist with her emotional adjustment. E.S. showed improvement following placement with her great-grandparents and received counseling to manage her anger and tantrums. E.S. received extensive oral surgery to correct "extreme neglect" while in Mother's care. The agency noted the status of Mother's mental health was unclear and she was homeless. The agency had renewed concerns about Mother's substance abuse. Because Mother was not compliant with services and had not demonstrated a proper change of behavior, the agency recommended modifying the custody request for J.S. and E.S. to legal custody to the great-grandparents.

{¶ 8} On July 21, 2021, the magistrate conducted a hearing attended by the great-grandparents, the children's GAL, the children's father, and social worker

Nicole House ("House"); Mother did not participate. The magistrate held the agency's motion for first extension of temporary custody in abeyance, and the court heard testimony from House on the agency's reasonable efforts motion.

{¶ 9} House testified that when she was assigned the instant case in June 2021, she thoroughly reviewed Mother's file. House testified that Mother's case plan encompassed mental health services, housing, and substance abuse services, and House reviewed the case plan objectives with Mother.[3]

{¶ 10} House testified that in 2020, Mother received mental health services from Ohio Guidestone while living at a shelter and subsequently discontinued those services. House testified that Mother claimed she obtained additional services and medication from different providers, but Mother never executed releases to allow the agency to obtain information directly from Mother's mental health providers. Additionally, House testified that she provided the names of mental health providers to Mother, but House could not state whether Mother utilized those services. House also testified that Mother was homeless and was reportedly using illegal drugs.

{¶ 11} Based upon House's testimony, the juvenile court found the agency made reasonable efforts to finalize the permanency plan for the children. The juvenile court adopted the magistrate's July 21, 2021 decision in its entirety.[4]

---

[3] A review of Mother's case plan shows substance abuse is not a designated objective, although the plan requires Mother's submission of drug screens at the agency's request.

[4] The juvenile court's journal entry that reflected its adoption of the magistrate's decision was docketed on August 7, 2021.

{¶ 12} On July 30, 2021, the agency filed a motion to amend the dispositional prayer from a motion for first extension of temporary custody to a motion to modify temporary custody to legal custody. On October 12, 2021, the agency updated the family case plan and noted Mother's failure to complete case plan services and her need to find employment and/or apply for income benefits to maintain housing and provide basic needs for the children.

{¶ 13} On October 15, 2021, the magistrate held a hearing on the agency's motion to modify temporary custody to legal custody with the great-grandparents. The juvenile court denied Mother's motion for a continuance. House and the children's GAL testified at the hearing.

{¶ 14} House testified that she completes monthly onsite visits with J.S. and E.S. House testified that the children live with their great-grandparents who meet their basic needs. House testified that J.S. and E.S. interact regularly with relatives who live on the same street as their great-grandparents. House stated that the children's mental health concerns are addressed with consistent therapy treatment and their poor speech and oral hygiene problems have been remedied while living with their great-grandparents. House further testified that the great-grandparents facilitated medical care for the children's ongoing health issues.

{¶ 15} House testified that Mother had not remedied the concerns that caused the agency to file the original complaint and, therefore, House did not believe it would be safe for J.S. and E.S. to return home with their Mother. House stated that Mother initially received mental health services in 2020 and early 2021. House,

who began working with Mother in June 2021, recommended mental health providers to Mother but she is unaware of Mother utilizing those services. House testified that Mother failed to provide her mental health provider information so that the agency could verify her receipt of services.

{¶ 16} House also testified that Mother failed to secure consistent and stable housing. House stated that Mother allegedly had a lease in December 2020, from which she was wrongfully evicted, and Mother subsequently signed a rental lease agreement the day prior to the custody hearing. House testified that while photos of the newly leased property appeared physically acceptable, the agency needed to complete a background check on the individual who cosigned the lease with Mother. The cosigner had no prior relationship with J.S. and E.S.

{¶ 17} House testified that Mother provided negative drug tests from February through April 2021 and no drug tests were submitted again until August 2021. House stated Mother's August 29, 2021 urine screen tested positive for cocaine and fentanyl. House further testified that Mother claimed the positive drug test stemmed from a Novocain prescription she took on August 7, 2021, when she was hospitalized and treated for a jaw injury. House did not find this explanation plausible although House conceded she did not obtain the applicable hospital records. House referred Mother for substance abuse services and offered to provide bus tickets to assist with Mother's transportation to receive those services. House testified that Mother never participated in substance abuse services from the time the case opened until one week prior to the custody hearing when Mother told

House, via text, that she would participate in substance abuse treatment if that was the agency's preference.

{¶ 18} The great-grandparents facilitated visitation between J.S., E.S., and Mother, and House testified the great-grandparents would continue to do so.

{¶ 19} The children's GAL recommended legal custody to the great-grandparents was in the best interests of the children. The GAL stated that the children reside in a stable environment and are being raised by a community of relatives. The GAL noted the length of time the case had been pending and the fact that prior to the agency's involvement, J.S. and E.S.'s well-being was jeopardized because of Mother's failure to address their health needs. While the GAL was encouraged that Mother signed a lease and was attempting to address some of her case plan initiatives, he was concerned by Mother's positive drug test a few months prior to the custody hearing. The GAL acknowledged there were many unresolved issues that led to his recommendation for legal custody. The GAL recommended a "strong visitation schedule" for Mother.

{¶ 20} The record shows that throughout the pendency of this case, Mother's visitation with the children was limited and consisted primarily of monthly phone calls. Mother then visited J.S. and E.S. four times a few weeks prior to the October 2021 custody hearing.

{¶ 21} The court found Mother made minimal progress on her case plan and on alleviating the cause for the children's removal from her home. The court found return of J.S. and E.S. to Mother would be contrary to the children's best interests.

The court also found placement of the children with their great-grandparents was appropriate and continued temporary custody was neither necessary nor in the children's best interests. The court terminated the order for temporary custody and committed J.S. and E.S. to the legal custody of their great-grandparents. The court granted Mother reasonable supervised parenting time until she demonstrated substantial compliance on the case plan objectives.

{¶ 22} On October 29, 2021, Mother filed objections to the magistrate's findings and argued the decision was against the manifest weight of the evidence and not in the children's best interests. Mother filed her objections 14 days after the magistrate's findings were filed, and the trial court failed to rule on those objections. On December 2, 2021, the trial court approved the magistrate's findings.

{¶ 23} On December 3, 2021, mother filed a notice of appeal. On June 2, 2022, this court dismissed Mother's appeal because absent a ruling on Mother's objections, there was no final appealable order.

{¶ 24} On June 2, 2022, the trial court overruled Mother's objections to the magistrate's findings and Mother filed a motion to reinstate the appeal. On June 14, 2022, this court granted Mother's motion to reinstate the appeal and now considers the following assignments of error for review:

> First Assignment of Error: The Cuyahoga County Juvenile Court erred and abused its discretion to the prejudice of this appellant in finding that a preponderance of the evidence supported granting legal custody of the subject children to their great-grandparents.
>
> Second Assignment of Error: The trial court erred to the prejudice of the appellant in not extending the temporary custody order, as the

mother had made significant case plan progress, and it was reasonable to believe that the child[ren] could be reunified with her within the period of extension.

**Legal Analysis**

{¶ 25} In her first assignment of error, Mother argues that the trial court's grant of legal custody to the great-grandparents was an abuse of discretion. In her second assignment of error, Mother argues that the trial court erred when it failed to extend the temporary custody order. Before we address the merits of Mother's appeal, we must review what occurred procedurally before the lower court.

{¶ 26} Pursuant to Civ.R. 53(D)(4)(d), a trial court must conduct an independent review of the case before it adopts a magistrate's decision. However, when a party objects to the magistrate's factual findings and wishes to preserve those challenges for consideration by the trial court, the party must provide the court with a transcript of the proceedings. Civ.R. 53(D)(3)(b)(iii). Where a party fails to timely file a transcript or affidavit of the evidence, the party waives any objections to the factual findings. *In re A.L.,* 8th Dist. Cuyahoga No. 99040, 2013-Ohio-5120, ¶ 11, citing *Ramsey v. Hurst*, 5th Dist. Licking No. 12-CA-70, 2013-Ohio-2674, ¶ 23. "If the objecting party fails to provide the court with a transcript of the magistrate's hearing, the trial court may properly adopt a magistrate's factual findings without further consideration." *In re S.H.,* 8th Dist. Cuyahoga No. 100911, 2014-Ohio-4476, ¶ 13, citing *In re Maxwell*, 4th Dist. Ross No. 05CA2863, 2006-Ohio-527, ¶ 27, citing *Proctor v. Proctor*, 48 Ohio App.3d 55, 60, 548 N.E.2d 287 (3d Dist.1988). Additionally, where the objecting party fails to provide a transcript to the trial court,

an appellate court is precluded from considering the transcript. *In re A.L.* at ¶ 12; *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730, 1995-Ohio-272, 654 N.E.2d 1254.

{¶ 27} Here, the trial court adopted the magistrate's findings. Mother objected to the magistrate's findings, but did not file a transcript of the proceedings with the trial court. The trial court overruled Mother's objections. While a transcript was filed with this court, the reviewing court may not consider the transcript since it was not available for the trial court's review. *In re A.L.* at ¶ 16; *In re S.H.* at ¶ 14. Mother's assignments of error are overruled.

{¶ 28} We note that even if this court were permitted to review the transcript, Mother's assignments of error would be overruled. At the time of the custody hearing, J.S. and E.S. had been in the custody of their great-grandparents for approximately 15 months. While the children's great-grandparents were in their eighties, both children had a bond with their great-grandparents as well as with their relatives who reside on the same street. The children had been doing well under their great-grandparents' care and received medical care and therapy for ongoing concerns. The great-grandparents' home was appropriate, safe, and stable, and all of the children's basic needs were met. Further, Mother's last-minute attempts to secure housing, submit to substance abuse treatment, and visit with the children were unpersuasive; it was unreasonable to believe J.S. and E.S. could be reunified with Mother within the period of extension.

{¶ 29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY EILEEN KILBANE, JUDGE

SEAN C. GALLAGHER, A.J., and
LISA B. FORBES, J., CONCUR