[Cite as *Keigley v. Keigley*, 2016-Ohio-180.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| JULIE OLSSON KEIGLEY | : | **JUDGES:** |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 15-CA-12 |
| SHANE E. KEIGLEY | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil appeal from the Fairfield County Court of Common Pleas, Domestic Relations Division, Case No. 12DR-423

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     January 19, 2016

APPEARANCES:

For Plaintiff-Appellee

MARGARET SMITH
660 Hill Road North
Box 880
Pickerington, OH 43147

For Defendant-Appellant

AMANDA BAKER
BARRY WOLINETZ
250 Civic Center Drive, Suite 220
Columbus, OH 43215

*Gwin, P.J.*

{¶1} Appellant appeals the February 12, 2015 judgment entry of the Fairfield County Court of Common Pleas, Domestic Relations Division, overruling his objections to the March 13, 2014 Magistrate's Decision.

*Facts & Procedural History*

{¶2} Appellee Julie Keigley and appellant Shane Keigley were married on July 2, 1988. On August 23, 2012, Wife filed a complaint for divorce. Husband filed an answer and counterclaim. A magistrate's order established temporary spousal support for Wife at $3,000 per month. Husband filed a motion for Civil Rule 75(N) hearing. The magistrate conducted a trial and hearing on the Civil Rule 75(N) motion on March 13, 2014.

{¶3} Husband testified that he has a high school diploma and attended college for one year. Husband previously worked at U.S. Corrugated making $130,000 per year. He was terminated in 2010 and the family lived off of his severance and retirement account withdrawals until he returned to work in 2012. Husband currently works at Packaging Corporation of America and has an annual salary of $110,000. He travels for the job, has health insurance, and life insurance. Husband testified that he intends to remain employed at his current position. Prior to obtaining the job at Packaging Corporation, Husband did not want to accept a job in New York because he did not want to move and because it would be at a lower salary of $80,000.

{¶4} With regards to Wife's employment, Husband testified that when their first son was born, they decided it was better for her to stay at home. Husband was "absolutely" in agreement that he work and Wife stay at home. In 2011 after he was terminated, Husband stated that he asked Wife to return to work, but she did not want to.

Wife wanted to sell items and downsize their home, but Husband did not want to. Husband testified that he and Wife did not talk much about her going back to work.

{¶5} Husband testified that, when married, he and Wife lived a pretty comfortable lifestyle. They travelled, he had a motorcycle, cars, and guns. Husband stated that Wife was diagnosed with depression after their youngest son was born.

{¶6} Husband is currently paying the mortgage, insurance, and taxes on the marital residence. Husband also pays for his son's vehicle and auto insurance for himself, his son, and Wife. Husband stated that he is waiting on the realtor to list the marital home for sale. The realtor was to send him a list of things that need to be done to the house, but Husband has not discussed it with the realtor.

{¶7} Wife testified that she plans on moving back to North Carolina and is going to lease a house there. Wife graduated from high school and graduated from college with a teaching degree in 1983. Wife and Husband agreed that she would stay at home when their oldest son was born. She continued to stay home after their youngest son was born. Wife tutored and substitute taught when her youngest son went to school. Wife worked sporadically and earned approximately $90 per day. In 2001, Wife had to renew her teaching certificate in North Carolina. In 2004, Wife was a part-time primary reading teacher and earned $20,000 per year. Wife testified that she did not go back to work in 2010 because she and Husband agreed that she should help the boys adjust to entering high school as they were moving to Ohio. Further, Wife stated that she was not stable and needed more medication. Wife got her teaching certificate in Ohio so she could substitute teach and teach preschool.

{¶8} Husband and Wife's youngest son was killed in March of 2011. Wife stated that after their son's death, Husband said he would work wherever it took him. She did not think her oldest son was stable, so she did not work. In 2012, Wife started substitute teaching in Pickerington School System sporadically, earning $80 per day. Wife testified that she did not consider returning to work full-time after her youngest son's death because of her stress level. Further, that her oldest son wanted to move back to North Carolina so she knew she should not take a full-time position in Ohio and quit. Wife has earned $5,625 from January of 2013 to May of 2013. Wife stated that she intends to substitute teach in North Carolina. She testified that she is not able to have a full-time classroom given her age. She will have to get her own medical plan at a cost of $400-$500 per month.

{¶9} Wife testified that after her youngest son was born, she could not sleep and could not function. She saw a psychiatrist and was on medication for several years. She stated that several years later, she relapsed into anxiety. She saw another psychiatrist and was prescribed anti-depressant medications. In 2006, Wife relapsed again and was put on antidepressants. She was still on medication when the family moved to Ohio and still currently takes medication for depression. On cross-examination, Wife testified that she has never been hospitalized for depression.

{¶10} After the trial, each party filed proposed findings of facts and conclusions of law. The magistrate issued a decision on March 13, 2014. The magistrate ordered that the marital home be sold and should be immediately listed by a realtor selected by Wife at a price agreed upon by Husband and Wife upon the recommendation of the hired realtor. With regards to spousal support, the magistrate completed a detailed analysis of

each factor of R.C. 3105.18. The magistrate found that Husband is employed as a Senior Operations Trainer and Specialist for Packaging Corporation of America. In 2013, he earned a gross salary of $110,000, plus a bonus of $10,000. He is reimbursed for travel expenses. As of May 2013, Wife earned $5,625 as a substitute teacher.

{¶11} As the parties' earning abilities, Husband claimed that Wife should be able to earn $40,000 annually as a teacher based upon her teaching certificate. The magistrate found that in 2012 and 2013, Wife worked as a substitute teacher in Pickerington, Ohio. In 2012, she earned $4,378.50 and, as of May 2013, earned $5,625. Wife earns $80 per day when she substitute teaches. The magistrate found that if Wife were able to work all 180 days of school as a substitute teacher, the most she could earn would be $14,400 annually. Further, that Wife testified that she is relocating back to North Carolina with her son and she has not yet obtained employment there.

{¶12} The magistrate stated that earning ability includes both the amount of money one is capable of earning by his or her qualification, as well as his or her ability to obtain such employment. The magistrate found that while Husband testified he wanted Wife to go back to work when he was unemployed, Husband offered no testimony or other evidence as to her earning ability or ability to obtain employment. While Husband offered payroll information from teachers in Fairfield County in his proposed findings of fact and conclusions of law, he did not offer this testimony at trial. The magistrate concluded that Wife has shown she is capable of earning $14,400 as a substitute teacher. Thus, the magistrate imputed this amount of income to her. The magistrate found Husband is fully employed at his earning capacity.

{¶13} Husband suffers from high blood pressure and arthritis. Wife was diagnosed with generalized anxiety disorder in 1996 and her most recent diagnosis in 2013 indicates hypertension and depression. Husband has no retirement benefits and Wife has STRS in the amount of $246.00. The parties were married just shy of twenty-five (25) years. The magistrate found that the parties lived an upper-middle class lifestyle. Husband, because of his income, is living the same standard of living the parties enjoyed during the marriage. The magistrate stated that Wife, without spousal support, would be living below the standard of living that the parties' enjoyed during the marriage.

{¶14} Husband is a high school graduate and attended college for one year. Wife has a teaching license. As to assets and liabilities, the magistrate found that the parties have few assets outside of the marital home, vehicles, and proceeds from a wrongful death lawsuit. During the pendency of the proceedings, the parties used a significant amount of the memorial fund for their son to pay off marital credit card debt and marital obligations. The parties' liabilities include a mortgage and a loan from Husband's uncle. Each Husband and Wife were assigned assets of $75,481.61. Spousal support will be taxable income for Wife and will be a tax deduction for Husband.

{¶15} With regards to the lost production capacity of either party that resulted from that party's marital responsibilities, the magistrate found that Wife lost income earning potential as a result of her marital responsibilities. The magistrate noted that both Husband and Wife testified that they agreed Wife would take care of the children and that Wife would not be employed outside the home. Further, that Husband testified that in order to succeed in his career he did "whatever it took," which included frequent travel and working many hours. Husband testified that Wife's contributions as a stay-at-home

mother and caretaker of the family residence contributed to his success in moving up the ladder in his career. The magistrate thus found that the contribution of Wife allowed Husband to meet his current level of earning ability. The magistrate noted that she also considered the FinPlan submitted in her determination of spousal support.

**{¶16}** Taking these factors into account, specifically that the marriage was of a long duration and Wife had little opportunity to develop meaningful employment outside the home, the magistrate determined an indefinite spousal support award of $3,500 per month is appropriate and reasonable under the circumstances of the case.

**{¶17}** The magistrate also denied Husband's motion to modify temporary orders. Husband requested a modification of temporary orders from September 13, 2012 concerning spousal support, debt payment, and attorney fees. In the temporary orders, Husband was ordered to pay $3,000 per month spousal support, the first mortgage on the marital home, taxes and insurance on the real estate, and the second mortgage. Husband has exclusive possession of the real estate. The magistrate noted that, after taking into consideration income taxes, Husband received 53.2% of the parties' income and Wife received 46.8% of the parties' income. Further, that Wife earned approximately $10,000 less in actual income because she didn't earn as much as was imputed to her. The magistrate determined that the amount of spousal support in the temporary orders was appropriate and reasonable considering the length of the marriage, the income disparity between the parties, and the actual income upon which each party had to live.

**{¶18}** Husband filed objections to the magistrate's entry with regards to spousal support and denial of the Civil Rule 75(N) motion to modify. Wife filed a response to Husband's objections.

{¶19} On February 12, 2015, the trial court entered an order overruling Husband's objections in part and sustaining Husband's objections in part. The trial court found that the magistrate properly determined the income of the parties and the relative earning abilities of the parties in accordance with R.C. 3105.18. The trial court stated that while there was evidence presented that Wife had a teaching certificate, there was no evidence presented to the Court concerning the potential income Wife could earn if fully employed as a teacher. Further, that Wife testified she was unable to maintain full-time employment as a teacher as a result of her mental health issues. The trial court found that the only evidence of Wife's income before the Court was her testimony concerning her prior and current income. Therefore, the trial court found no error in the determination of the factual issues or application of the law in the amount of spousal support.

{¶20} As to the duration of the spousal support, the trial court found that, given the length of the marriage as well as the evidence concerning Husband and Wife's employment history and Wife's long term and ongoing battle with depression, that the magistrate's decision concerning the duration of the spousal support was reasonable and appropriate. However, the trial court found that the magistrate erred in failing to include a reservation of jurisdiction to modify the indefinite spousal support award. Accordingly, the trial court found it is reasonable and appropriate that a spousal support award of long duration shall remain subject to the jurisdiction of the court for modification purposes. The trial court found there was no error in the magistrate's denial of Husband's motion to modify temporary orders.

{¶21} Husband appeals the February 12, 2015 judgment entry of the trial court and assigns the following as error:

**{¶22}** "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS AWARD OF SPOUSAL SUPPORT TO WIFE."

I.

**{¶23}** A trial court's decision concerning spousal support may be altered only if it constitutes an abuse of discretion. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 554 N.E.2d 83 (1990). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). R.C. 3105.18(C)(1) provides that a trial court may award spousal support when it is "appropriate and reasonable." R.C. 3105.18(C)(1) sets forth the factors a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support.

**{¶24}** These factors include: (a) income of the parties, from all sources * * *; (b) the relative earning abilities of the parties; (c) the ages and the physical, mental, and emotional conditions of the parties; (d) the retirement benefits of the parties; (e) the duration of the marriage; (f) the extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) the standard of living of the parties established during the marriage; (h) the relative extent of education of the parties; (i) the relative assets and liabilities of the parties; (j) the contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience

* * *; (l) the tax consequences, for each party, of an award of spousal support; (m) the lost income production capacity of either party that resulted from that party's marital responsibilities; and (n) any other factor that the court expressly finds to be relevant and equitable.

**{¶25}** Trial courts must consider all the factors listed in R.C. 3105.18(C). We have previously held that a trial court need not acknowledge all evidence relative to each and every factor listed in R.C. 3105.18(C) and we may not assume that the evidence was not considered. *Hutta v. Hutta*, 177 Ohio App.3d 414, 2008-Ohio-3756, 894 N.E.2d 1282 (5th Dist.). The trial court need only set forth sufficient detail to enable a reviewing court to determine the appropriateness of the award. *Id,* citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988).

*Earning Capacity*

**{¶26}** Husband contends the trial court erred in determining Wife's earning capacity to be $14,400 per year and in awarding her $3,500 per month in spousal support based on that amount. We disagree.

**{¶27}** R.C. 3105.18(C)(1) lists fourteen (14) factors that a trial court must consider in determining whether spousal support is appropriate and reasonable, including the "income" and "earning abilities" of each party. R.C. 3105.18(C)(1). When imputing income in a divorce proceeding, trial courts consider that "earning ability involves both the amount of money or is capable of earning by his or her qualifications, as well as his or her ability to obtain such employment." *Haniger v. Haniger*, 8 Ohio App.3d 286, 456 N.E.2d (10th Dist. 1982). The determination of whether a party is voluntarily unemployed or under-employed is a factual determination to be made by the trial court based on the

circumstances of each particular case. *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993).

{¶28} In the case at bar, the trial court imputed the yearly income of $14,400 to Wife. This amount represents the amount Wife would earn if she substitute taught for every day of the school year. In making this determination, the trial court considered evidence that Wife had a teaching certificate. Further, that Wife earned $4,378.50 in 2012 and, as of May of 2013, earned $5,625. Wife testified that she earns $80 per day substitute teaching, which the trial court considered in its determination of her income.

{¶29} The parties agreed that Wife would provide care for the couple's children and the household while Husband pursued his career. Husband testified that he was "absolutely" in agreement that Wife stay at home while he worked. Husband testified that Wife's contributions as a stay-at-home mother and caretaker of the family residence contributed to his success in moving up the ladder in his career. When her second child went to school, Wife had a series of part-time, sporadic jobs, such as a tutor or reading specialist. Her recent annual earnings ranged from $4,500 to $5,700. Wife currently anticipates moving to North Carolina with her son and obtaining a job comparable to the one she has here substitute teaching. Wife testified that she is not able to have a full-time classroom teaching job due to her age, her lack of experience as a full-time teacher, and her mental health and depression issues. Based upon our review of the record, we find the trial court did not abuse its discretion in imputing an annual income of $14,400 to Wife. See *Brown v. Brown*, 5th Dist. Fairfield No. 08-CA-64, 2009-Ohio-3832; *Seaburn v. Seaburn*, 5th Dist. Stark No. 2004CA00343, 2005-Ohio-4722; *Kirkpatrick v. Kirkpatrick*, 5th Dist. Tuscarawas No. 2014AP050018, 2015-Ohio-427.

{¶30} Additionally, Husband argues that the trial court should have taken judicial notice of published earnings from teachers in the area as provided by Husband. We disagree. First, the information Husband states that the trial court erred in not considering was not introduced at trial, nor proffered as evidence at any time during the trial. Further, even if the trial court had considered the exhibit and recognized the median earnings for elementary school teachings in Lancaster, Ohio, Husband failed to present any evidence a trial to rebut Wife's testimony concerning her salary and her inability to maintain a full-time classroom teaching job due to her age and mental health issues. Husband did not present any evidence regarding the availability of elementary school teaching positions: in the location where Wife resides or in North Carolina where she intends to move; for a person of Wife's age (51 years old); for a person, like Wife, who has not worked full-time as a classroom elementary school teacher for over twenty (20) years; and for a person with Wife's mental health issues. The trial court did not abuse its discretion in imputing an annual income of $14,400 to Wife.

*Duration of Spousal Support*

{¶31} Husband argues the trial court erred in awarding Wife indefinite spousal support. Husband contends that Wife is not of advanced age and has the opportunity to develop employment outside of the home.

{¶32} The Ohio Supreme Court has stated that,

Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability, and potential to be self-supporting, an award of sustenance alimony

should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.

*Kunkle v. Kunkle*, 51 Ohio St.3d 64, 554 N.E.2d 83 (1990). In *Hutta v. Hutta*, we recognized that *Kunkle* does not stand for the proposition that permanent spousal support is mandated in marriages of long duration. *Hutta v. Hutta*, 5th Dist. Delaware No. 10CAF40031, 2011-Ohio-3041. However, we also recognized that, generally, marriages lasting over 20 years have been found to be sufficient to justify spousal support of indefinite duration. *Kraft v. Kraft*, 5th Dist. Fairfield No. 08-CA-0039, 2009-Ohio-5444.

{¶33} In this case, we find the trial court did not abuse its discretion in awarding indefinite spousal support to Wife. This was a marriage of long duration (24 years) and the record reflects that Wife had little opportunity to develop more than part-time employment opportunities outside the home. See *Kracker v. Kracker*, 5th Dist. Stark No. 2007CA00287, 2008-Ohio-3751. Husband testified that he agreed that Wife would stay at home to care for the children and that Wife's contribution allowed him to reach his current level of earning ability. Wife worked sporadically during the marriage when her second child start school, but she testified that she is not able to have a full-time classroom job due to her age and her ongoing battle with depression and anxiety. Wife has not worked as a full-time classroom teacher in over (20) years. Further, Wife will have to provide her own medical plan at approximately $400 - $500 per month.

{¶34} Husband currently works at Packaging Corporation of America and has an annual salary of $110,000. He travels for the job, has health insurance, and life insurance. Husband testified that he intends to remain employed at his current position. Thus,

Husband has the resources and ability to provide continuing support to Wife.  *Batten v. Batten*, 5th Dist. Fairfield No. 09-CA-33, 2010-Ohio-1912; *Hutta v. Hutta*, 5th Dist. Delaware No. 10CAF40031, 2011-Ohio-3041.   Moreover, in this case, the potential burden on Husband of a permanent order is ameliorated by the trial court's retention of jurisdiction to review and/or modify the award.  *Wharton v. Wharton*, 5th Dist. Fairfield No. 02-CA-83, 2003-Ohio-3857.

*Date of Spousal Support*

**{¶35}** Husband argues that the trial court erred in ordering that spousal support be retroactive to June 20, 2013.  Husband contends it is inequitable to make such an order retroactive when Husband was still required to maintain all costs associated with the marital residence until sale.  Husband argues any award of support should have been effective the first day of the month following the sale of the marital residence.

**{¶36}** We find the trial court did not abuse its discretion in awarding the amount of $3,500 in spousal support from June 20, 2013.  The parties stipulated to the marriage termination date of June 20, 2013.  In its judgment entry, the magistrate specifically cited and analyzed all the factors of R.C. 3105.18 in determining that spousal support is appropriate and reasonable from the date of the termination of the marriage.  Further, in that trial court's judgment entry, the trial court specifically found that the magistrate did not err in the determination of factual issues or the application of the law set forth in R.C. 3105.18(C)(1).

**{¶37}** A trial court must consider all statutory factors when making a spousal support award "and not base its determination upon any one factor taken in isolation." *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988).  Accordingly, the fact

that Husband had to pay the costs associated with the marital home was just one factor the trial court could consider in making the determination of the amount and starting date of the spousal support. It is clear from the record that the magistrate and the trial court considered the factors enumerated in R.C. 3105.18 in determining whether spousal support was appropriate and the appropriate starting date for spousal support. We find that the trial court's determination is not an abuse of discretion.

*Temporary Spousal Support*

**{¶38}** Husband contends the trial court erred in denying his motion to modify temporary spousal support.

**{¶39}** Civil Rule 75(N)(1) authorizes the domestic relations court to "grant spousal support pendete lite to either of the parties for the party's sustenance and expenses during the suit" for divorce. Similarly, R.C. 3105.18(B) allows a court to award either party reasonable temporary spousal support during the pendency of any divorce proceeding. The purpose of the award is to preserve the status quo of the parties' economic positions during the divorce proceeding. *Kahn v. Kahn*, 42 Ohio App.3d 61, 536 N.E.2d 678 (2nd Dist. 1987).

**{¶40}** Temporary spousal support only needs to be an amount that is "reasonable." R.C. 3105.18(B). Reasonable support is the amount which an obligor has the ability to pay and which is sufficient to meet the obligee's present needs. *Norton v. Norton*, 111 Ohio St. 262, 145 N.E.2d 253 (1924). Courts are given discretion in deciding what reasonable support is because that determination is dependent upon the unique facts and circumstances of each case. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 541 N.E.2d 597 (1989).

**{¶41}** Under the circumstances of this case, we find the trial court did not abuse its discretion in denying the motion to modify the temporary spousal support. Husband contends it was unreasonable for him to pay both the mortgage and the $3,000 in spousal support. We disagree. Husband continued to live in the martial home after Wife left when she found out Husband was having an affair. Husband's income far surpassed Wife's income and it is undisputed that resulted from the parties' mutual decision that Wife would stay at home while Husband worked and advanced his career. Wife was financially dependent upon Husband to maintain the status quo for her as she was working only part-time and made only $5,600 as of May 2013. The award of spousal support was necessary to maintain the status quo. As noted by the magistrate, with the award of temporary spousal support and expenses Husband had to pay, Husband received 53.2% of the parties' income and Wife received 46.8% of the parties' income.

**{¶42}** Because the evidence established that the parties relied primarily on Husband's income during the lengthy marriage, that Husband had the ability to pay temporary spousal support, and that Wife had the need for temporary spousal support during the pendency of the divorce, the trial court's denial of the motion to modify/terminate temporary spousal support was not unreasonable, arbitrary, or unconscionable. *Bolender v. Bolender*, 4th Dist. Adams No. 13CA84, 2014-Ohio-2136; *Grein v. Grein*, 11th Dist. Lake No. 2009-L-145, 2010-Ohio-2681.

{¶43} Based upon the foregoing, Husband's assignment of error is overruled.  The February 12, 2015 judgment entry of the Fairfield County Common Pleas Court, Domestic Relations Division, is affirmed.


By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur