[Cite as *Benschoter v. Benschoter*, 2017-Ohio-8827.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | JUDGES: |
|---|---|---|
| THOMAS DEAN BENSCHOTER | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| Plaintiff-Appellant/Cross-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 17-CA-25 |
| LARA JANE BENSCHOTER | : | |
| | : | |
| Defendant-Appellee/Cross-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Civil appeal from the Licking County Court of Common Pleas, Domestic Relations Division, Case No. 2015-DR-0877

JUDGMENT: Affirmed in part; Reversed and Remanded in part

DATE OF JUDGMENT ENTRY: November 30, 2017

APPEARANCES:

For Plaintiff-Appellant/Cross-Appellee

KARIN L. COBLE
316 N. MICHIGAN AVENUE
SUITE 600
TOLEDO, OH 43604

For Defendant-Appellee/Cross-Appellant

PAUL GIORGIANNI
1538 ARLINGTON AVENUE
COLUMBUS, OH 43212-2710

*Gwin, P.J.,*

{¶1}  Both Husband and Wife appeal the April 7, 2017 judgment entry of the Licking County Court of Common Pleas, Domestic Relations Division.

*Facts & Procedural History*

{¶2}  On August 7, 2015, appellant/cross-appellee Thomas Benschoter ("Husband") filed a complaint for divorce against appellee/cross-appellant Lara Benschoter ("Wife").  The parties were married on June 7, 1997 and have three minor children, K.B., born on January 6, 2000, R.B., born on September 1, 2001, and S.B., born on November 22, 2004.

{¶3}  The magistrate issued an ex parte order on August 10, 2015, ordering Husband and Wife to share custody of the children equally.  The magistrate held a hearing on August 21, 2015.  On August 24, 2015, after interviewing the children, the magistrate vacated the ex parte order and stated he was not convinced of the accuracy of Husband's description of his involvement and relationship with the children as set forth in his affidavit. The magistrate designated Wife as the residential parent of the children, ordered the children to counseling with any uninsured expense associated with counseling to be paid by Husband, and ordered the parties to propose a parenting time schedule.

{¶4}  Wife filed an answer to the complaint and cross-complaint on September 2, 2015.  On September 22, 2015, the magistrate issued an order stating he wanted a recommendation from the children's counselor regarding a temporary parenting schedule and ordered supervised visitation until he received that recommendation.  The trial court appointed a guardian ad litem ("GAL") for the children on October 28, 2015.  The magistrate issued an order on November 10, 2015, and declined to change the parenting

time until he received a report from the GAL. Further, the magistrate ordered that, starting November 2, 2015, Husband was to pay: temporary child support of $1,439 per month, the mortgage on the marital home, real estate taxes on the marital home, insurance on the marital home, utility bills for the marital home, the family cell phones, the minimum payments on Chase and Capital One credit cards, insurance premiums for the family's vehicles, and health insurance premiums for the family. The magistrate also ordered Husband to reimburse Wife $1,600 for expenses incurred for the children since the filing of the divorce action.

{¶5} Husband filed a motion on November 16, 2015 seeking increased parenting time, a reduction in the amount of child support, and to vacate the order for him to pay the $1,600. The GAL filed a memorandum on November 24, 2015 and he recommended Wife remain the residential parent, but that Husband receive unsupervised visitation. The magistrate held a hearing on February 5, 2016.

{¶6} The magistrate issued an order on February 17, 2016. The magistrate modified the temporary child support amount to $1,480.73, effective November 16, 2015, due to the fact that Husband earned more income in 2015 than indicated on his affidavit filed with his request for temporary orders. The magistrate deferred a decision on the $1,600 until the final divorce hearing. Finally, the magistrate ordered Wife to pay the utility bills for the marital home as of March of 2016.

{¶7} The parties agreed on April 21, 2016 that Husband would have unsupervised Local Rule 19 parenting time with the children and that the children would continue in counseling. Husband filed a motion for contempt on April 29, 2016 for the alleged failure of Wife to have the children attend parenting time and her alleged failure

to have the children attending counseling. The magistrate held a hearing on the motion on May 31, 2016 and issued an order on June 9, 2016 overruling Husband's motion for contempt. The magistrate found there was not clear and convincing evidence that Wife engaged in a course of conduct designed to estrange and alienate the children from Husband. Further, that Wife was complying with the court order to not be present during the exchange for Husband's visitation time and the counselor recommended sessions with the children stop for a while because the sessions were too adversarial.

{¶8} Prior to the hearing on the final divorce, the parties' filed the following stipulations: both parties' exhibits shall be admitted without objection as to admissibility for evidentiary purposes; the parties agree the fair market value of the marital home is $208,000; and the parties agree the vocational report (Exhibit 50) shall be admitted into evidence.

{¶9} The trial court held a final hearing of divorce on August 4, 2016 and November 9, 2016. John Benschoter ("John"), Husband's brother, testified that since Husband filed for divorce, the children will not speak to him. John went once with Husband to pick up the children for visitation and the children would not go with them. John loaned Husband money to help with living expenses.

{¶10} Mark Poole ("Poole") is the GAL. Poole testified Husband, Wife, and each of the children have undergone individual counseling. Further, there was an attempt to have counseling between Husband and the children, but it was not successful. Poole stated there is no abuse or neglect by either parent. According to Poole, no one has told him that Wife has or has not encouraged a relationship between Husband and the children, but it is Poole's impression Wife is angry and it has rubbed off on the children.

Poole testified Wife wants the children to make their own decisions and he thinks she has allowed that, but Poole also thinks Wife supports their decision not to see Husband. Poole believes the children are influenced by Wife's feelings towards Husband and this has contributed to the children's refusal to meet with Husband.

{¶11} Husband goes to get the children for visitation, but the children will not go with him. Poole testified the children have made it very clear to him that they do not want to go with Husband. Poole describes the children as being "adamant" about that. The police were called once when Husband went to pick the children up for visitation. Poole believes the lack of visitation damages Husband's relationship with the children.

{¶12} Poole's recommendation is that Wife remain the residential and custodial parent of the children and Husband have Local Rule 19 visitation. However, as to whether such Local Rule 19 visitation is going to occur, Poole stated, "I, you know, can't answer that, but I believe he should have the opportunity to at least try to spend time with his children."

{¶13} On cross-examination, Poole stated his recommendation differs from the wishes of the children, as they do not want to see Husband. Further, that even though he issued his report and recommendation, he also recognizes in his report the children will not attend a visitation with Husband.

{¶14} On re-direct, Poole testified he thinks Husband wants to have a relationship with the children, but Husband needs to understand these are older children who are cognizant of the decisions they are making.

{¶15} Upon examination by the trial court, Poole stated Wife believes the children are old enough to make the decision whether to spend time with Husband. Poole

supports the children making this decision, but is concerned because they are still children, and their decisions are not always in their own best interest. When the trial court asked Poole for a suggestion as to what visitation might work in the future, Poole stated he wished he had an answer, but the children are "firmly entrenched in where they're at and I don't know if it's going to take a time where they are maybe older and out of – out on their own to maybe, but right now I don't have a – counseling – joint counseling hasn't worked, they haven't really wanted to cooperate with that." Further, that the children are "clearly angry and they remain so and I haven't see anything to – to change that." Poole stated it is the children's position that they do not want to see Husband or have a relationship with him. However, Poole testified there is nothing in his investigation to suggest terminating the relationship between Husband and the children is in the children's best interest.

{¶16} Poole testified to both his January 2016 report and July 2016 supplemental report (Exhibit 54). In his supplemental report, Poole detailed Husband and Wife's highly contentious relationship and the children's unwavering and steady assertion that they are angry with Husband and do not wish to see him. Despite the ordered Rule 19 visitation, the children have "steadfastly refused" to leave with Husband for any of these parenting times or communicate with him. Poole believes this position is supported by Wife.

{¶17} In his July 2016 supplemental report, Poole concludes that the children having no contact or parenting time with Husband is not in their best interest, but recognizes the children are old enough to make cognizant, if unwise, decisions on their own. Poole acknowledges the children cannot be physically compelled or forced to attend

parenting times with Husband. Despite this, Poole recommends Husband have unsupervised visitation pursuant to Local Rule 19.

{¶18} In his case-in-chief, Husband testified he moved out of the marital home on July 7, 2015. He is currently forty-two years old and has a Bachelor's of Fine Arts degree in Graphic Design. Husband is a senior account director at Mindstream Interactive, making approximately $97,000 per year with average bonuses of $1,500 to $3,000 per year. As of June 30, 2016, Husband's gross pay for the year was $49,125 and his net pay was $24,332.32, after the following is taken out of his pay: child support, Health Savings Account funds, social security, Medicare, state taxes, city taxes, medical insurance, dental insurance, and vision insurance. Husband believes Wife's salary warrants a significantly larger amount than what she has listed.

{¶19} Husband testified that Exhibit 43 shows the mortgage balance as of October 1, 2015. Further, that as of July of 2016, the mortgage balance is $155,922.99. Husband has made the mortgage loan payments since the parties' separation.

{¶20} Husband stated Exhibit 45 is a list of his expenses. Husband testified he cannot pay all the payments that are ordered (house payment, credit cards, insurance, child support), because his income is less than his expenses. His family has loaned him money to help with living expenses. Husband testified he and Wife received a tax refund in 2015 of $3,262 that needs to be allocated. Husband stated that from July to November of 2015, prior to the issuance of the temporary orders by the magistrate, Husband paid the house payment for the marital home, all utilities for the marital home, cell phone bills for himself, Wife, and the children, minimum credit card payments on two credit cards, and auto and health insurance for the family.

{¶21} Husband stated he and Wife lived comfortably during the marriage, but probably a little beyond their means. Husband talked to Wife about going back to work during the marriage, but Wife did not want to. Husband testified Wife last worked full-time over eleven years ago she has been a homemaker with part-time jobs for the past eleven or twelve years.

{¶22} As to the children, Husband testified that before he left the home, the kids saw him and Wife fighting and, when he left the home, the children stopped talking to him. If he attends their activities, the children ignore him and do not respond to him. Husband believes they are angry because he left the home and they are fueled by the anger of Wife. Husband stated he would not force the children to go with him, but wants to attend their events and be given an accurate schedule of their activities. He wants to communicate with the children if they want to see him, but he wants it to be in person, not via text. Husband wants the opportunity to continue to demonstrate he loves the children. Husband does not care if Wife encourages the children to visit him or not.

{¶23} Wife testified she has a Bachelor in Fine Arts. She has kidney disease that is under control with medication. Wife worked when she and Husband first got married. She lost her job and was downsized prior to the birth of their second child. She and Husband worked for themselves for a while. Husband then went back to work full-time. She continued to freelance and stay at home to take care of the children. Wife testified the employment situation evolved that way, but was also by agreement. She took care of the children, took care of the house, and freelanced on the side.

{¶24} Wife currently has two part-time jobs. Wife testified she has been out of the workplace for fifteen years, so she would probably have to go back for some schooling;

further, that she does not have time to do this due to the time committed to keeping the children's schedules. S.B. is in travel basketball and baseball, R.B. is in travel softball, and K.B. works at the church nursery and baby-sits.

{¶25} Wife stated Husband is paying the mortgage, car insurance, cell phone, and credit card bills. Wife identified Exhibit C as her anticipated expenses going forward that she has now or sees having in the future. As to the $1,600 she requested from Husband, Wife testified it was mainly all the children's expenses prior to when Husband was ordered to pay child support. Wife identified Exhibit D as these expenses.

{¶26} On cross-examination, Wife testified she keeps her eyes open for a job, but she is busy doing what she is trying to do. On Exhibit D, Wife confirmed she did not pay $275 and the amount also included a birthday gift for her niece.

{¶27} Mark Greenwood, Wife's father, testified he has a close relationship with the children. Further, that he is helping Wife pay bills and he hopes to get paid back.

{¶28} On rebuttal, Husband testified he and Wife fought about Wife going back to work because they were living beyond their means. Husband feels the children are now older and can help out while Wife works full-time.

{¶29} During his court-ordered visitation time, Husband shows up, knocks on the door, one of the children says they are not going with him, he says "I love you" and then leaves. Husband believes these exchanges are valuable because he can demonstrate he is still their dad. Husband gets no phone calls or text messages from the children and believes he has been "reduced to a paycheck." Husband testified he has no relationship with his children.

**{¶30}** Husband disputes the $1,600 amount because:  he paid $250 for R.B.'s softball, the recreation department paid a $275 fee, the children already have bedsheets and blankets, and the meal expenses are higher than for three children.  Further, because he is already paying the auto insurance that is included in the $1,600 amount.

**{¶31}** The trial court issued a nunc pro tunc judgment entry and decree of divorce on April 7, 2017.  The trial court found the duration of the marriage was from June 7, 1997 to August 4, 2016.  The trial court determined the division of property is fair, just, equitable, and made in compliance with R.C. 3105.171.

**{¶32}** The trial court found Husband has a base salary of $98,255, with bonuses of $3,000 in 2015, $3,000 in 2014, and $1,250 in 2013, and Wife is employed at two part-time jobs, earning approximately $26,000 per year and an additional $1,000 per year through self-employment.  The trial court found Wife's income to be $27,000 per year and found she is not voluntarily underemployed at this time.  The trial court further found the parties' agreed the mortgage balance at the time of the divorce was $165,407.92.  Finally, the trial court found Husband has a Health Savings Account with a balance of $9,564.94 as of June 30, 2016, he regularly contributes to this account, the account is marital in nature, and Husband paid counseling and health expenses from this account during the pendency of the case in the amount of $3,130.

**{¶33}** The trial court awarded legal custody of the children to Wife and ordered Wife the residential parent of the children.  The trial court found it is in the best interest of the children for Husband to have parenting time with the children every other Sunday and every other holiday from 10:00 a.m. to 4:00 p.m.  The trial court stated it, "enters this limited parenting time schedule after considering all factors in R.C. 3109.04 and R.C.

3109.051," the report of the GAL, and the children's wishes, as the trial court found the children of sufficient age and maturity to express an opinion regarding parenting time. The trial court found the children are currently estranged from Husband in conjunction with the deterioration of their parents' relationship and marriage.

{¶34} The trial court noted the children did not have a particular reason for not wanting to see Husband, but said they never had a close relationship with him and he never seemed willing to listen or be part of their lives except for baseball. The trial court attributed some of this to the fact that Husband was the primary income earner and worked many hours, while delegating most of the parental responsibilities to Wife. The trial court noted the counseling between Husband and the children was unproductive and also stated Husband will need small steps to attempt to repair his relationship with the children, and should make sure time spent is focused on the children having a positive experience.

{¶35} The trial court ordered Husband to pay $919.06 per month in child support. The trial court awarded Husband the tax exemption for the children beginning in 2017 and every year after, provided he is substantially current in his child support obligation. The trial court awarded Wife the real estate with the mortgage balance of $165,407.92. Husband was awarded the Health Savings Account with the approximate balance of $9,564.95, free and clear of any claim of Wife. Husband was also awarded the remainder of the tax refund for 2015, which the trial court included on the balance sheet and utilized to reduce the equalization payment. The trial court found that to provide an equitable division of assets and debts, Wife shall pay Husband $18,903.30 at the time of the closing or refinancing of the real estate.

{¶36} With regards to spousal support, the trial court stated it reviewed and considered R.C. 3105.18, specifically those factors listed in (C)(A)(a)-(n), and found an award of spousal support to Wife to be reasonable. As to factors (a) and (b), the trial court found: Husband earns $98,000 per year and averages a bonus of $2,400 per year and is earning at his capacity, while Wife earns $26,000 per year and facilitates the role as primary caregiver for the children. While Wife has the capacity to work full-time and earn more, it would mean more time away from home. As the children get older, there is the possibility that Wife could increase her income. Regarding factor (c), the trial court found the parties are mentally and physically healthy and capable of working full-time. As to factor (d), the trial court found any retirement benefits were divided equally between the parties and Wife has separate retirement assets of $72,000 and $9,400. The trial court found the duration of the marriage to be nineteen years.

{¶37} As to factor (f), the trial court found Wife left the workforce to become the primary caregiver and maintains that role, but, as the children get older, full-time employment should be available to her in the next couple of years. Regarding factor (g), the trial court found the parties are middle-class and were living above their means prior to the separation. The trial court found both have four-year graphic design degrees. As to factor (i), the trial court found the martial assets are equalized, but Wife has $80,000 of separate assets. The trial court found factors (j), (k), and (n) are not applicable in the instant case. The trial court found, pursuant to factor (l), Husband can deduct spousal support from his income and Wife has to add it to her income. Finally, as to factor (m), the trial court found Wife withdrew from full-time employment to care for the children, but there was no testimony as to quantifying any lost income capacity.

**{¶38}** The trial court stated that, based on the foregoing factors, spousal support of $2,500 per month is reasonable and appropriate. Further, that while the spousal support award is indefinite, the trial court retains jurisdiction to modify or terminate the award of spousal support.

**{¶39}** As to the $1,600 judgment against Husband, the trial court found this amount included expenses that were not actually paid by Wife. Further, that Husband already paid for some of the fees in question, and continued to pay the mortgage and utilities when these expenses were incurred and prior to the temporary orders being issued. Thus, the trial court sustained Husband's motion to set aside the $1,600 judgment against him.

**{¶40}** Husband appeals the decision of the trial court and assigns the following as error:

**{¶41}** "I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DEVIATED FROM THE STANDARD LOCAL RULE 19 VISITATION SCHEDULE AND SIGNIFICANTLY REDUCED APPELLANT'S VISITATION.

**{¶42}** "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED APPELLANT TO PAY SPOUSAL SUPPORT INDEFINITELY.

**{¶43}** "III. THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THE AMOUNT OF SPOUSAL SUPPORT.

**{¶44}** "IV. THE TRIAL COURT ERRED IN FAILING TO DESIGNATE THE 2016 CHILD TAX EXEMPTION AS BELONGING TO APPELLANT.

{¶45} "V. THE TRIAL COURT PLAINLY ERRED WHEN IT DISTRIBUTED A HIGHER MORTGAGE DEBT TO WIFE FOR PURCHASING THE HOME, CONTRARY TO THE EVIDENCE."

{¶46} Wife also appeals the decision of the trial court and assigns the following as error:

{¶47} "I. THE TRIAL COURT ERRED WHEN IT DESIGNATED THOMAS AS THE PERSON WHO MAY CLAIM THE CHILDREN AS DEPENDENTS FOR FEDERAL INCOME TAX PURPOSES FOR 2017 AND EVERY YEAR THEREAFTER.

{¶48} "II. THE DIVORCE DECREE FAILS TO REIMBURSE LARA $1,565, REPRESENTING ONE-HALF OF THE $3,130 OF EXPENSES THAT THE COURT ORDERED THOMAS TO PAY ALONE.

{¶49} "III. THE TRIAL COURT DID NOT ORDER THOMAS TO MAINTAIN LARA OR THE CHILDREN AS BENEFICIARIES OF THE LIFE INSURANCE POLICIES.

{¶50} "IV. THE TRIAL COURT VACATED THE NOVEMBER 10, 2015 TEMPORARY ORDER THAT THOMAS PAY LARA $1,600, THEREBY DEPRIVING LARA OF MOST CHILD SUPPORT FOR THE FIRST THREE MONTHS OF THE DIVORCE ACTION."

I.

{¶51} In his first assignment of error, Husband contends the trial court abused its discretion when it deviated from the standard Local Rule 19 visitation schedule and reduced his visitation.

{¶52} The standard of review for matters concerning visitation rights is whether the trial court committed an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 541

N.E.2d 1028 (1989).  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶53}**  Husband first argues that in order to reduce his visitation to minimal time less than standard Local Rule 19 visitation, Wife must show parental unfitness or other non-standard circumstances.  However, this Court has not adopted such a standard and has previously held that, in order to further the child's best interest, the trial court has the discretion to limit or restrict visitation rights.  *Hurst v. Hurst*, 5th Dist. Licking No. 12-CA-70, 2013-Ohio-2674.  "This includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place, and deny visitation rights altogether if visitation would not be in the best interests of the child."  *Id.*

**{¶54}**  Further, R.C. 3109.051(F)(2) provides that each court of common pleas "shall adopt parenting time guidelines."  However, the same section also provides that, "a court shall have discretion to deviate from its standard parenting time guidelines based upon factors set forth in division (D) of this section."  The code does not limit a downward deviation to situations of parental unfitness or non-standard circumstances, but instead requires consideration of the factors contained in R.C. 3109.051(D).  R.C. 3109.051(A) provides that, "whenever possible, the order or decree permitting the parenting time shall ensure the opportunity for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child."  Again, the code does not mention unfitness or non-standard circumstances, but requires the consideration of the best interests of the child.

{¶55} R.C. 3109.051 provides the trial court should consider fifteen factors in determining the children's best interest regarding visitation. These factors include: prior interactions of the children with the parents; location or residence of each parent; the children's and parents' available time; age of the children; the children's adjustment to home, school, community; the wishes and concerns of the children; the health and safety of the children; the amount of time available to spend with siblings; the mental and physical health of all parties; each parent's willingness to reschedule missed parenting time; and any other factor in the best interest of the children.

{¶56} Husband contends the trial court did not appropriately consider and review all the relevant factors, and instead focused only on one factor, the children's wishes. We disagree. The trial court specifically stated in its judgment entry that it considered all factors in R.C. 3109.04 and R.C. 3109.051 and there is no evidence that the trial court did not consider these factors. While the trial court highlighted the wishes of the children, the trial court also specifically considered other factors such as the age of the children (17 ½ years old, 16 years old, and 13 years old), the prior interactions between the children and each parent, each parent's available time, the fact that counseling between Husband and the children was unproductive, and the schedule of the children in terms of sporting events.

{¶57} Upon review of the record and the trial court's judgment entry, we conclude the trial court did consider the factors upon which evidence was presented by the parties according to the directive of R.C. 3109.051. We find the trial court did not abuse its discretion in determining the limited visitation schedule it established was in the children's best interest. While Poole recommended standard Local Rule 19 visitation, he also

testified he realizes the children would not attend such a visitation. When the trial court asked Poole what type of visitation might work, Poole said he wished he had an answer, but the children are "firmly entrenched in where they're at" and joint counseling has not worked. Further, the trial court granted Husband the standard Local Rule 19 visitation during the parties' separation, but as testified to by both Poole and Husband, the children refused to go with Husband each time he came to pick them up. Poole stated that, despite his recommendation, he realizes that children are old enough to make a decision regarding visitation, even if Poole believes it is an unwise decision and that the children cannot be physically compelled or forced to attend the visits.

{¶58} Husband testified that though he currently has no relationship with his children, he wants to be able to show up at the marital home, knock on the door, tell the children he loves them, and leave. Pursuant to the visitation schedule established by the trial court, Husband can do this every other Sunday from 10:00 a.m to 4:00 p.m. and every other holiday from 10:00 a.m. to 4:00 p.m. While the schedule is limited, it is not tantamount to no visitation at all. The trial court explained the rationale behind the limited visitation schedule and considered the appropriate factors in making its determination.

{¶59} Husband argues the trial court erred in granting him less than standard Local Rule 19 visitation because Wife did not expressly object to this visitation. As noted above, we find the relevant inquiry is that of the best interest of the children and the trial court has the power to limit, restrict, or deny visitation altogether, regardless of whether the residential parent specifically objected to the standard visitation. Further, Poole made it clear that the children themselves objected to the standard Local Rule 19 visitation, as

he testified the children "made it clear they do not want to go with" Husband and the children are "adamant" about that.

**{¶60}** Husband's first assignment of error is overruled.

II.

**{¶61}** In his second assignment of error, Husband contends the trial court abused its discretion in awarding Wife spousal support of indefinite duration.

**{¶62}** Husband argues there were no findings by the trial court to support spousal support of indefinite duration. We disagree. As discussed below, the trial court specifically cited and analyzed the relevant factors of R.C. 3105.18 in determining the amount and length of spousal support. We have previously held that the trial court need only set forth sufficient detail to enable a reviewing court to determine the appropriateness of the award. *Hutta v. Hutta*, 177 Ohio App.3d 414, 2008-Ohio-3756, 894 N.E.2d 1282 (5th Dist.). We find there is sufficient detail in the trial court's judgment entry to enable this Court to determine the appropriateness of the length and duration of the award.

**{¶63}** In *Hutta v. Hutta*, 5th Dist. Delaware No. 10CAF0031, 2011-Ohio-3041, we noted that the Ohio Supreme Court's opinion in *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 554 N.E.2d 83 (1990), does not stand for the proposition that permanent spousal support is mandated in marriages of long duration. However, "a marriage of long duration in and of itself would permit a trial court to award spousal support of indefinite duration without abusing its discretion or running afoul of the mandates of *Kunkle*." *Id.*

**{¶64}** Husband contends that since the parties were not married twenty years and were only married nineteen years, it was not a "marriage of long duration" and thus indefinite spousal support was an abuse of discretion. We disagree. The trial court

specifically found the duration of the marriage was from June 7, 1997 to August 4, 2016. This is a period of nineteen years and fifty-eight days. This Court has previously found that in cases where the parties were married "almost twenty years" and the trial court retained jurisdiction over spousal support, the trial court did not abuse its discretion in awarding indefinite spousal support. *Kraft v. Kraft*, 5th Dist. Fairfield No. 08-CA-0039, 2009-Ohio-5444.

{¶65} This case is analogous to *Kraft* in that the parties were married almost twenty years and the trial court retained jurisdiction to modify or terminate the spousal support award and specifically noted that, as the children get older, there is the possibility that Wife could increase her income. *Id.*; see also *Coward v.* Coward, 5th Dist. Licking No. 15-CA-46, 2016-Ohio-670 (stating the potential burden of a permanent spousal support order is ameliorated by the trial court's retention of jurisdiction to review and/or modify the award). Additionally, throughout a majority of the marriage, Wife was a stay-at-home mother with only part-time jobs and the record reflects she had little opportunity to develop more than part-time employment opportunities outside the home due to her role as primary caregiver to the children. *Keigley v. Keigley*, 5th Dist. Fairfield No.15-CA-12, 2016-Ohio-180.

{¶66} Accordingly, we find the trial court did not abuse its discretion in awarding Wife spousal support of indefinite duration. Husband's second assignment of error is overruled.

III.

{¶67} In his third assignment of error, Husband argues the trial court erred in determining the amount of spousal support.

**{¶68}** Husband contends the trial court erred in awarding Wife $2,500 per month in spousal support. He argues the trial court did not justify its reasons for the amount of spousal support and that this amount will leave Husband with a monthly deficit.

**{¶69}** R.C. 3105.18(C)(1) provides that a trial court may award spousal support when it is "appropriate and reasonable." R.C. 3105.18(C)(1) sets forth the factors a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, and duration of spousal support. These factors include: (a) income of the parties, from all sources * * *; (b) the relative earning abilities of the parties; (c) the ages and the physical, mental, and emotional conditions of the parties; (d) the retirement benefits of the parties; (e) the duration of the marriage; (f) the extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) the standard of living of the parties established during the marriage; (h) the relative extent of education of the parties; (i) the relative assets and liabilities of the parties; (l) the tax consequences, for each party, of an award of spousal support; and (m) the lost income capacity of either party that resulted from the party's marital responsibilities.

**{¶70}** We have previously held that a trial court need not acknowledge all evidence relative to each and every factor listed in R.C. 3105.18 and we may not assume that evidence was not considered. *Hutta v. Hutta*, 177 Ohio App.3d 414, 2008-Ohio-3756, 894 N.E.2d 1282 (5th Dist.). The trial court need only set forth sufficient detail to enable a reviewing court to determine the appropriateness of the award. *Id.*, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988). In this case, in its judgment entry, the trial court specifically stated it considered and reviewed the factors in

R.C. 3105.18.  Additionally, the trial court listed each factor and the factual findings it considered when weighing those factors.  Thus, we find there is sufficient detail to enable this Court to determine the appropriateness of the award.

**{¶71}**  Upon review of the record, we find no abuse of discretion in the trial court's decision as to the amount of spousal support.  The parties were married over nineteen years. Husband earns $98,000 per year and receives an average yearly bonus of $2,400.  Wife earns $27,000 per year and is the primary caregiver for the children.  The parties were living above their means prior to the separation.  Both parties were questioned on their monthly expenses; Husband disputes the amounts in Wife's proposed budget and Wife disputes the amounts in Husband's proposed budget.  The trier of fact is vested with the authority to weigh the evidence and assess the credibility of the witnesses in this regard.  *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

**{¶72}**  In addition, the trial court retained jurisdiction over the issue of spousal support as to the amount and the duration.  The trial court specifically found that, as the children get older, full-time employment should be available to Wife in the next couple of years.  Thus, Husband can return to the trial court upon the proper motion should circumstances change.  *Dodson v. Dodson*, 5th Dist. Stark No. 2001CA00327, 2002-Ohio-3091; *Elder v. Elder*, 5th Dist. Fairfield No. 2008-CA-74, 2009-Ohio-4868.

**{¶73}**  Husband also argues the trial court erred in awarding the amount of spousal support because it will cause his monthly expenses to exceed his income.  However, as this Court has previously held, simply because spousal support creates a negative cash flow for one of the parties does not necessarily lead to a finding of an abuse of discretion.  *Daniels v. Daniels*, 5th Dist. Muskingum No. CT2017-0002, 2017-Ohio-6976; *Compton v.*

*Compton*, 5th Dist. Stark No. 2014CA00207, 2015-Ohio-4327. Further, a court must consider all statutory factors when making a spousal support award and not base its determination upon one factor taken in isolation. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988). This is just one factor the trial court could consider in making the determination as to spousal support.

{¶74} Further, as noted above, each party disputed the other's expenses post-divorce. However, the trier of fact is vested with the authority to weigh the evidence and assess the credibility of the witnesses regarding post-divorce expenses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Upon review, we find the trial court appropriately considered the relevant factors in R.C. 3105.18, including the monthly income and expenses of each party.

{¶75} Husband also contends the trial court's finding that Wife was not voluntarily underemployed was an abuse of discretion. We disagree. Whether a party is "voluntarily underemployed" is a factual determination to be made by the trial court based upon the circumstances of each particular case. *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993). There is no "magic language" requirement in deciding if an individual is voluntarily underemployed. *Snyder v.* Snyder, 5th Dist. Stark No. 2008CA00219, 2009-Ohio-5292. A determination with respect to these matters will only be reversed upon a showing of abuse of discretion. *Id.* "In deciding if an individual is voluntarily underemployed, the court must determine not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and his or her duty to provide for the continuing needs of the child." *Farrell v. Farrell*, 5th Dist. Licking No. 2008-CA-0080, 2009-Ohio-1341.

{¶76} Husband argues that since Wife stipulated to Exhibit 50, the Vocational Report completed involving Wife, she stipulated to the opinion of the assessor that her earning capacity is $37,000. However, while Wife did stipulate that Exhibit 50 shall be admitted without objection as to admissibility, there is nothing in the record to show she stipulated to the result or opinion contained therein. Further, though Husband contends the trial court erred in not imputing the figure in the Vocational Report, the assessor in the report noted finding a full-time job in graphic design will take time and specifically noted "it will be up to someone besides this witness to decide how Mrs. Benschoter's child care obligations affect her ability to do work whether in her home or outside." Thus, the assessor did not take into consideration Wife's child care obligations in reaching his result, whereas the trial court did.

{¶77} We find the trial court did not abuse its discretion in failing to impute the additional $10,000 in income to Wife. Wife has not worked full-time for approximately fifteen years. She testified she lost her job before the parties' second child was born and she then freelanced and stayed at home to take care of the children while Husband returned to work full-time. Wife stated the employment situation, "evolved that way, but was also by agreement." Husband testified he wanted Wife to go back to work during the marriage, but acknowledged she has been a homemaker with a part-time job for about twelve years. Wife testified that since she has been out of the workplace for fifteen years, she probably would need to go back for some schooling, but currently does not have time because of the children's' schedules.

{¶78} We find the trial court did not abuse its discretion in determining the amount of spousal support. Husband's third assignment of error is overruled.

IV.

**{¶79}** In his fourth assignment of error, Husband argues the trial court erred in failing to designate the 2016 child tax exemption as belonging to him. Wife agrees the trial court failed to designate which party can claim the children as dependents for tax purposes for 2016; however, she contends this court should designate the 2016 tax exemption as belonging to her.

**{¶80}** Upon review of the judgment entry, the trial court did not allocate the 2016 tax exemption. Husband asks this Court to "modify the judgment" to allocate the 2016 tax exemption to him. We decline to do so, as pursuant to R.C. 3119.82, it is up to the trial court to make such a designation ("whenever a court issues * * * a child support order, it shall designate which parent may claim the children who are subject of the court child support order as dependents for federal income tax purposes * * *").

**{¶81}** Accordingly, we sustain Husband's fourth assignment of error in part and reverse and remand the case to the trial court to allocate the tax exemptions for 2016.

V.

**{¶82}** In his fifth assignment of error, Husband contends the trial court plainly erred when it failed to include the proper amount of the mortgage balance in the judgment entry spreadsheet.

**{¶83}** In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Kell v. Russo*, 5th Dist. Stark No. 2011 CA 00082, 2012-Ohio-1286, citing *Goldfuss v. Davidson*, 79 Ohio

St.3d 116, 679 N.E.2d 1099 (1997); *Pratt v. Easton Technical Products, Inc.*, 5th Dist. Stark No. 2014CA00144, 2015-Ohio-3180. In *Goldfuss*, the Court explained that the doctrine should only be applied in extremely unusual circumstances where the error complained of, if left uncorrected, would have a material adverse effect on the character of and public confidence in the judicial proceedings. 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997).

{¶84} Exhibit 43 provided the trial court with two values, the mortgage balance as of September 2015 and the mortgage balance as of July 2016. We find the trial court's use of the value when the divorce was filed does not present exceptional circumstances that rise to the level of plain error, especially in a situation as in this case where traditional temporary spousal support was not ordered in a fixed amount, but where the monthly amount corresponded to expenses, including the home mortgage.

{¶85} In his brief, Husband also asks this Court to modify the divorce decree to account for mortgage payments he made during the months between the time the trial ended and the trial court's issuance of the divorce decree. However, Husband cites no legal authority in support of this proposition. Further, Husband did not make this argument to the trial court, either during trial or via a post-trial motion. Since he did not make this argument to the trial court, he has waived this argument of purposes of appeal. *FirstMerit Bank, N.A. v. Shaheen*, 5th Dist. Stark No. 2011CA00079, 2011-Ohio-6146.

{¶86} Husband's fifth assignment of error is overruled.

### Cross-Assignment of Error I.

{¶87} In her first assignment of error, Wife contends the trial court erred in designating Husband as the person who may claim the children as dependents for federal

income tax purposes for 2017 and every year thereafter. Wife contends that the trial court did not make the appropriate determinations pursuant to R.C. 3119.82, but that the remedy is not to remand to the trial court for such consideration, but for this Court to reverse and remand with instructions to designate her as the person who may claim the children as dependents for 2017 and thereafter due to the presumption she has as the custodial parent. Husband concedes the trial court did not find the tax exemption is in the best interest of the children, but argues that evidence of such best interest was introduced, so the remedy is to remand for the trial court to expressly state its consideration of the statutory factors and state its finding as to best interest. We agree with Husband.

{¶88} We review a trial court's decision allocating tax exemptions for dependents under an abuse of discretion standard. *Hughes v. Hughes*, 35 Ohio St.3d 165, 518 N.E.2d 1213 (1988). Thus, pursuant to *Blakemore v. Blakemore*, we must determine whether the trial court's decision in awarding the tax exemptions to Husband was arbitrary, unconscionable, or unreasonable, and not merely an error of law or judgment. 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). However, this discretion is both limited and guided by R.C. 3119.82. Thus, if the trial court allocates the tax exemptions to the non-custodial parent, it must find the interest of the child has been furthered and must consider any relevant factors concerning the best interest of the child in making such a decision. *Doyle v. Metzer*, 5th Dist. Stark No. 2015CA00002, 2015-Ohio-3738.

{¶89} In this case, the trial court allocated the tax exemptions to Husband, the non-custodial parent. While the trial court did not expressly state it considered the factors in R.C. 3119.82 or that the allocation of exemptions was in the children's best interest,

Husband did introduce evidence regarding best interest, such as testimony regarding the parties' income, the relative financial circumstances of the parties, and the needs of the parents and children, along with extensive exhibits including previous tax returns, and paystubs from each party.

{¶90} Accordingly, we reverse and remand the matter to the trial court to express its consideration as to the factors in R.C. 3119.82. Wife's first assignment of error is sustained in part.

Cross-Assignment of Error II.

{¶91} In her second assignment of error, Wife contends the trial court erred in failing to reimburse her for one-half of the expenses the court ordered Husband alone to pay. Wife contends the magistrate ordered Husband to pay for counseling with "separate, non-marital funds" and that the trial court erred in not taking this into consideration in the equalization of the marital property.

{¶92} In the 2015 magistrate's order, the magistrate ordered the parties and children to engage in counseling. The order provided, "any uninsured expenses associated with this counseling is to be paid by the plaintiff [Thomas]." Husband agrees he paid the counseling sessions from the Health Savings Account, which the trial court found he alone contributed to and is "marital in nature." However, the magistrate's temporary order does not order Husband to pay for counseling with separate, non-martial funds. Additionally, the trial court specifically found the division of property is "fair, just, equitable, and made in compliance with R.C. 3105.171." We find the trial court did not abuse its discretion in this determination. See *Cockerham v. Cockerham*, 5th Dist. Licking No. 16-CA-88, 2017-Ohio-5563.

**{¶93}** Wife's second assignment of error is overruled.

Cross-Assignment of Error III.

**{¶94}** In her third assignment of error, Wife argues the trial court erred in failing to order Husband to maintain the child as beneficiaries of the life insurance policies. Husband concedes this assignment of error.

**{¶95}** Accordingly, Wife's third assignment of error is sustained. We reverse and remand for the trial court to order Husband to maintain the children as the beneficiaries of the life insurance policies.

Cross-Assignment of Error IV.

**{¶96}** In her fourth assignment of error, Wife contends the trial court erred in vacating the November 10, 2015 temporary order that Husband pay her $1,600. Wife argues that, by vacating the temporary award, the trial court left her with little in the nature of support for July 2015 to November of 2015 when Husband began support payments to Wife. We disagree.

**{¶97}** Husband testified that, prior to the issuance of the temporary orders by the magistrate in November of 2015, he paid the following: mortgage payment on the marital home, all utilities for the marital home, cell phone bills for himself, Wife, and the children, minimum credit card payments on two credit cards, and auto and health insurance premiums for himself, Wife, and children. Wife confirmed in her testimony that Husband paid these expenses from July of 2015 to November of 2015.

**{¶98}** The trial court specifically noted that Husband fulfilled his child support obligation for these months prior to temporary child support being ordered by paying all household expenses. We find no abuse of discretion in this determination. Although not

specifically characterized as child support, Husband paying the aforementioned debts effectively provided Wife with temporary support and she was not denied child support for the first three months of the divorce action. *Leister v. Leister*, 5th Dist. Delaware No. 97CA-F-07027, 1998 WL 751457. Accordingly, we find the trial court did not abuse its discretion in vacating the temporary order for Husband to pay Wife $1,600.

{¶99} Wife's fourth assignment of error is overruled.

{¶100} Based on the foregoing, we affirm in part and reverse and remand in part the April 7, 2017 judgment entry of the Licking County Court of Common Pleas, Domestic Relations Division.  We reverse and remand in part for the trial court to:  allocate the tax exemptions for 2016; express its consideration of the factors in R.C. 3119.82 as to the tax exemptions for 2017 and in subsequent years; and to order Husband to maintain the children as beneficiaries on the life insurance policies.  The remainder of the April 7, 2017 judgment entry is affirmed.

By Gwin, P.J.,

Wise, John, J., and

Baldwin, J., concur